325 U.S. 697 (1945)
INLAND EMPIRE DISTRICT COUNCIL, LUMBER & SAWMILL WORKERS UNION, ET AL.
v.
MILLIS, INDIVIDUALLY AND AS CHAIRMAN AND MEMBER OF THE NATIONAL LABOR RELATIONS BOARD, ET AL.
No. 613.
Supreme Court of United States.
Argued February 26, 27, 1945.
Decided June 11, 1945.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA.
*698 Mr. George E. Flood, with whom Messrs. Joseph A. Padway and James A. Glenn were on the brief, for petitioners.
Mr. Alvin J. Rockwell, with whom Solicitor General Fahy, Messrs. Charles F. McErlean, David Findling and Miss Ruth Weyand were on the brief, for respondents.
MR. JUSTICE RUTLEDGE delivered the opinion of the Court.
This controversy grows out of a contest between rival labor unions over the right to act as collective bargaining representative of employees of Potlatch Forests, Inc., a company conducting logging, lumbering and milling operations in northern Idaho. Petitioners seek relief from a certification order of the National Labor Relations Board issued pursuant to § 9 (c) of the National Labor Relations Act. 49 Stat. 453; 29 U.S.C. § 159 (c). They are affiliated with the American Federation of Labor, the certified union with the Congress of Industrial Organizations.
In American Federation of Labor v. Labor Board, 308 U.S. 401, this Court held that a certification under § 9 (c) is not reviewable by the special statutory procedure except incidentally to review of orders restraining unfair labor practices under § 10. Decision was expressly reserved whether, apart from such proceedings, review of certification may be had by an independent suit brought pursuant to § 24 of the Judicial Code. 308 U.S. 412.
Petitioners now assert the right to such review. Prior to the certification, they had represented the company's employees in collective bargaining. They do not seek *699 review upon the merits of the certification. Their claim is that they were denied the "appropriate hearing" which § 9 (c) requires and that the effect was not only to deprive them of the statutory right to hearing but also to deny them due process of law contrary to the Fifth Amendment's guaranty. Accordingly they seek, in substance, injunctive relief requiring respondents, members of the Board, to vacate the order of certification or, in the alternative, a declaratory judgment that the order is invalid.
The District Court declined to dismiss the suit, upon respondents' motion alleging, among other grounds, that the court was without jurisdiction of the subject matter. The Court of Appeals reversed the judgment, one judge dissenting. 144 F.2d 539. That court held that the statutory review is exclusive, with the consequence that this suit cannot be maintained. The obvious importance of the decision caused us to grant the petition for certiorari.[1] 323 U.S. 703.
In American Federation of Labor v. Labor Board, 308 U.S. at 412, the Court said, with reference to the question whether the Wagner Act has excluded judicial review of *700 certification under § 9 (c) by an independent suit brought under § 24 of the Judicial Code:
"It can be appropriately answered only upon a showing in such a suit that unlawful action of the Board has inflicted an injury on the petitioners for which the law, apart from the review provisions of the Wagner Act, affords a remedy."
Petitioners earnestly urge that this case presents the required showing of unlawful action by the Board and resulting injury. Unless they are right in this view, it would be inappropriate, as was said in the American Federation of Labor case, to determine the question of reviewability. That question should not be decided in the absence of some showing that the Board has acted unlawfully. Upon the facts presented, we think no such showing has been made, whether by way of departure from statutory requirements or from those of due process of law.
On March 9, 1943, local unions affiliated with the C.I.O. filed petitions with the Board for certification as bargaining representatives in three of the company's five logging and milling plants or units. The plants were geographically separate. Some were located as far from others as one hundred miles. But there was common ownership, management and control, with occasional shifting of crews or men from one plant to another.[2] Although the petitions sought separate local units rather than a single company-wide unit, the Board consolidated them for hearing before a trial examiner.
The hearing was held in May, 1943. The company, the C.I.O., and the petitioners, who may be referred to collectively as the A.F. of L.,[3] appeared and participated. *701 No complaint is made concerning this hearing. It was apparently a typical representation proceeding. The principal issue was the character of the appropriate unit. The A.F. of L. urged that the unit should be company-wide. The C.I.O. advocated separate plant units.
The Board's decision was rendered July 13, 1943. 51 N.L.R.B. 288. It found that the A.F. of L. had organized the employees on a company-wide basis and on this basis had made a "master contract" with the company, which, however, was supplemented by local contracts relating to local matters in each of the five operations. The Board concluded that the history of the bargaining relations had demonstrated the appropriateness of a unit consisting of all the logging and mill employees of the company. It therefore dismissed the petitions of the C.I.O. on the ground that the three separate plant units sought were inappropriate.
Three days later, on July 16, the C.I.O. filed a further petition, this time asking to be certified as bargaining representative on a company-wide basis, excluding clerical, supervisory, confidential, and temporary employees, as well as employees of Potlatch Townsite and Potlatch Mercantile Company.[4] The unit thus suggested conformed generally to the one covered by the outstanding A.F. of L. contract.
On September 14, pursuant to C.I.O.'s motion, the Board served notice upon the A.F. of L. to show cause why the decision of July 13 should not be vacated; the petitions in the earlier cases reinstated and treated as amended by the new petition; and why the Board should not reconsider and proceed to decision without further hearing. The order also proposed to make part of the *702 record the statement of the Board's field examiner concerning the C.I.O. claims of authorization to represent employees.[5]
The A.F. of L. responded by filing a "Protest and Objection." This alleged that the proposed order contemplated a decision without the taking of evidence, to be based in part on an ex parte survey of the C.I.O. claims of authorization by employees; that employees of the two units not involved in the first proceeding would have no opportunity to present evidence in their own behalf;[6] and that the Board had no authority to set aside the A.F. of L.'s existing contract by such proceedings.
The Board considered the objections, but found them insufficient, rejected the protest and, without further hearing for the taking of evidence, considered the case upon the full record, including that made in the original hearings. It again approved a company-wide unit, following the historical lines of organization, but excluded certain "fringe" classifications in conformity with generally established policy. It further found that a question concerning representation had arisen and directed that an election be held among the employees in the appropriate unit as it had been determined. The Board's decision was rendered October 14, 1943. 52 N.L.R.B. 1377.
The election was held during the following November and resulted in a majority for the C.I.O.[7] The A.F. of L. filed "Objections and Exceptions to Election," see 55 *703 N.L.R.B. 255, 256, which renewed the claim of impropriety in failing to hold another hearing and also challenged some exclusions of employees from eligibility to take part in the election. Accordingly the A.F. of L. moved to vacate the decision and direction of election, to vacate the election itself, to stay certification and to grant an appropriate hearing.
In January, 1944, the Board granted the A.F. of L.'s motion for further hearing, but deferred ruling upon the request to vacate the previous decision and the election. The hearing was held before a trial examiner in February, 1944. Petitioners appeared and participated fully, as did the company and the C.I.O. No complaint is made concerning the scope of this hearing or the manner in which it was conducted, except as to its timing in relation to the election. Full opportunity was afforded petitioners to present objections and evidence in support of them. From the absence of contrary allegation, as well as the official report of the Board's decision, it must be taken that all available objections to the Board's procedure and action were made, considered, and determined adversely to petitioners.[8]
The Board rendered its supplemental decision on March 4, 1944. 55 N.L.R.B. 255. This made supplemental findings of fact based upon the entire record, including the record in the original proceedings, the election report, petitioners' objections and exceptions, the motion for reconsideration, and the evidence and objections taken at the February hearing. After reviewing the entire proceedings, the Board found that an "appropriate hearing" had been given, within the requirement of § 9 (c); ruled upon each of petitioners' objections, whether new or renewed; and concluded that none of them furnished adequate reason for disturbing its previous decision and direction for election. Accordingly it denied the motion to vacate that *704 decision and the election, and certified the C.I.O. as exclusive bargaining representative of the employees in the unit found appropriate. A.F. of L.'s further motion for reconsideration was denied and thereafter the present suit was instituted.[9]
Upon this history petitioners say they have been denied the "appropriate hearing" § 9 (c) requires. They insist that the hearing, to be "appropriate," must precede the election. Accordingly the February, 1944, hearing is said to be inadequate to satisfy the statutory requirement, as well as due process, although no complaint is made concerning its adequacy in any respect other than that it followed, rather than preceded, the election.
Petitioners urge also that the procedure was unwarranted for the Board to vacate the decision of July, 1943, reopen or "reinstate" the original proceedings, treat the C.I.O.'s petition for company-wide certification as an amendment to its original petitions, and thereafter to regard the record in the earlier proceedings as part of the record in the later ones, together with the field examiner's report concerning C.I.O. employee representation.
Petitioners' exact contention concerning the reopening of the original proceedings is not altogether clear.[10] But, *705 in any event, it clearly maintains that the Board's action, in effect treating the later proceedings as a continuance of the earlier ones, injected new issues upon which petitioners were entitled to present additional evidence. Accordingly it is claimed that the original record, together with the additional matter presented by the new petition, the motions which followed and the proceeding to show cause, was not adequate to sustain the Board's action in vacating its first decision and entering the direction for election. Although petitioners urge that the preelection proceedings were defective, they emphasize most strongly that the February hearing could not cure the failure to grant the further hearing they demanded prior to the election.
The Board's position is, in effect, twofold: that there was no departure from the statute's requirements or those of due process in the proceedings prior to the election;[11] *706 and, if they were defective in any respect, the departure was cured by the full hearing granted at petitioners' insistence after the election.
We think petitioners have misconceived the effects of § 9 (c). It is as follows:
"Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 10 or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives." (Emphasis added.)
The section is short. Its terms are broad and general. Its only requirements concerning the hearing are three. It must be "upon due notice," it must be "appropriate," and it is mandatory "in any such investigation," but may be held in conjunction with a § 10 (unfair practice) proceeding or otherwise.
Obviously great latitude concerning procedural details is contemplated. Requirements of formality and rigidity are altogether lacking. The notice must be "due," the hearing "appropriate." These requirements are related to the character of the proceeding of which the hearing is only a part. That proceeding is not technical. It is an "investigation," essentially informal, not adversary. The investigation is not required to take any particular form or confined to the hearing. The hearing is mandatory  "the Board shall provide for" it. But the requirement is only that it shall be provided "in any such investigation." The statute does not purport to specify when *707 or at what stage of the investigation the hearing shall be had. It may be conducted "in conjunction with a proceeding under section 10 or otherwise."
Moreover, nothing in the section purports to require a hearing before an election. Nothing in fact requires an election. The hearing "in any such investigation" is mandatory. But the election is discretionary. The Board "may take a secret ballot. . . or utilize any other suitable method to ascertain such representatives."
An election, when held, is only a preliminary determination of fact. Sen. Rep. No. 573, 74th Cong., 1st Sess., 5-6; H.R. Rep. No. 1147, 74th Cong., 1st Sess., 6-7. A direction of election is but an intermediate step in the investigation, with certification as the final and effective action. Labor Board v. International Brotherhood of Electrical Workers, 308 U.S. 413, 414-415. Nothing in § 9 (c) requires the Board to utilize the results of an election or forbids it to disregard them and utilize other suitable methods.
It hardly can be taken, in view of all these considerations, that Congress intended a hearing which it made mandatory "in any such investigation" always to precede an election which it made discretionary for all and which, in the committee reports, it specifically denominated as only a method for making a preliminary determination of fact. That characterization was not beyond congressional authority to make and is wholly consistent with the discretionary status the section gives that mode of determination.
In view of the preliminary and factual function of an election, we cannot agree with petitioners' view that only a hearing prior to an election can be "appropriate" within the section's meaning. The conclusive act of decision, in the investigation, is the certification. Until it is taken, what precedes is preliminary and tentative. The Board is free to hold an election or utilize other suitable methods. *708 Such other methods are often employed and frequently are of an informal character. Petitioners' view logically would require the hearing to be held in advance of the use of any such other method as much as when the method of election is used.
Congress was fully informed concerning the effects of mandatory hearings preceding elections upon the process of certification. For under Public Resolution 44, which preceded § 9 (c), the right of judicial hearing was provided. The legislative reports cited above show that this resulted in preventing a single certification after nearly a year of the resolution's operation and that one purpose of adopting the different provisions of the Wagner Act was to avoid these consequences.[12] In doing so Congress accomplished its purpose not only by denying the right of judicial review at that stage but also by conferring broad discretion upon the Board as to the hearing which § 9 (c) required before certification.
Petitioners' argument does not in terms undertake to rewrite the statute. But the effect would be to make it read as if the words "appropriate . . . in any such investigation" were replaced with the words "hearing prior to any election." Neither the language of the section nor the legislative history discloses an intent to give the word "appropriate" such an effect. We think the statutory purpose rather is to provide for a hearing in which interested parties shall have full and adequate opportunity to present their objections before the Board concludes its investigation and makes its effective determination by the order of certification.
In this case that opportunity was afforded to petitioners. We need not decide whether the hearing would have been adequate or "appropriate," if the February, 1944, hearing had not been granted and held. In the Board's view, petitioners, when afforded the opportunity in the *709 proceedings to show cause held prior to the election, brought forward nothing which required it to hold a further hearing for the taking of evidence. With this petitioners disagree. We need not examine whether one or the other was correct in its view. For when the objections were renewed after the election, and others also were advanced, the Board gave full and adequate opportunity for hearing, including the presentation of evidence, concerning them. Petitioners do not contend that the hearing was a sham or that the Board did not consider their objections. They do not ask for review upon the merits. Their only objection is that the hearing came too late. That objection is not tenable in view of the statute's terms and intent.
It may be, as petitioners insist, that their interests were harmfully affected by the outcome of the election, through loss of prestige and in other ways. It does not follow that the injury is attributable to any failure of the Board to afford a hearing which was "appropriate" within the section's meaning. This being true, and since petitioners do not now question the Board's rulings upon the merits of the issues apart from those relating to the character of the hearing, the injury must be regarded, for presently material purposes, as an inevitable result of losing an election which was properly conducted.
Petitioners also assert that the Board departed from its own rules in failing to accord them the hearing demanded prior to the election. The regulations provide for direction of election to follow the hearing before the trial examiner and, in the Board's discretion, oral argument or further hearing as it may determine. Rules and Regulations, Art. III, §§ 3, 8, 9. But the regulations also contemplate further hearings for reconsideration before the final act of certification, a procedure of which petitioners had full advantage in this case. Whether or not the hearings provided before the election were adequate to *710 comply with the regulations, the procedure upon rehearing afterward was adequate to perform its intended function of affording full opportunity for correcting any defect which may have existed in the previous stages of hearing.[13]
We think no substantial question of due process is presented. The requirements imposed by that guaranty are not technical, nor is any particular form of procedure necessary. Morgan v. United States, 298 U.S. 468, 481. "The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." Opp Cotton Mills v. Administrator, 312 U.S. 126, 152, 153; cf. Bowles v. Willingham, 321 U.S. 503, 519-521.[14] That requirement was fully met in this case.
The judgment is
Affirmed.
MR. JUSTICE ROBERTS dissents.
NOTES
[1] The inferior courts have divided on the question. Compare Association of Petroleum Workers v. Millis, No. 20854 (N.D. Ohio), unreported; Sun Ship Employees Association, Inc. v. Labor Board, 139 F.2d 744 (C.C.A. 3); International Brotherhood of Electrical Workers v. Labor Board, No. 21994 (N.D. Ohio), unreported; American Broach Employees Association v. Labor Board, No. 4242 (E.D. Mich.), unreported; Spokane Aluminum Trades Council v. Labor Board, No. 349 (E.D. Wash.), unreported; with International Brotherhood of Electrical Workers v. Labor Board, 41 F. Supp. 57 (E.D. Mich.); American Federation of Labor v. Madden, 33 F. Supp. 943 (D.D.C.); Klein v. Herrick, 41 F. Supp. 417 (S.D.N.Y.); R.J. Reynolds Employees Association, Inc. v. Labor Board (M.D.N.C.), unreported; Reilly v. Millis, 52 F. Supp. 172 (D.D.C.), affirmed, 144 F.2d 259 (App. D.C.); Brotherhood & Union of Transit Employees of Baltimore v. Madden, 58 F. Supp. 366, 15 L.R.R. 519 (D. Md.), reversed, 147 F.2d 439, 15 L.R.R. 806; Inland Empire District Council v. Graham, 53 F. Supp. 369 (W.D. Wash.).
[2] Some special operations, e.g., the Washington-Idaho-Montana Railroad, were conducted through wholly owned subsidiaries.
[3] The collective designation is approximate both for convenience and by reason of the facts, noted in the text, relating to A.F. of L.'s dealings with the company through both a "master contract" and local supplemental agreements.
[4] The Board's report shows that employees of these operations had been excluded from the units in the local contracts which the A.F. of L. had with the separate operations of the company. 52 N.L.R.B. 1377, 1382-1383.
[5] The field examiner's report is introduced, not as proof of the extent of representation by the petitioning union, but to satisfy the Board that there is a substantial membership among the employees in the unit claimed to be appropriate sufficient to justify the Board's investigation.
[6] These were the plants located at Potlatch and Coeur d'Alene, which were not included in the units sought by the C.I.O. in its original petitions.
[7] The majority was of the ballots cast, but not of the total number of employees eligible to vote.
[8] Cf. 55 N.L.R.B. 255.
[9] The suit is the last in a series intended to prevent the holding of the election or to avoid certification founded upon it. See Inland Empire District Council v. Graham, 53 F. Supp. 369 (W.D. Wash.); Local 2766, Lumber & Sawmill Workers Union v. Hanson, Civil Action No. 1553 (D. Idaho), unreported; Inland Empire District Council v. Graham, Civil Action No. 834 (W.D. Wash.), unreported; Inland Empire District Council v. Labor Board, Civil Action No. 22353 (D.D.C.), unreported.
[10] The argument appears to regard them as irrevocably closed by the decision of July 13, 1943, and that decision as endowed with finality precluding the Board from later reopening the proceedings and considering further the record made in them. It seems also to suggest that the original petitions could not be amended, at any rate by treating the later petition as an amendment, after the decision, notwithstanding an order vacating it.
[11] The Board says that the two proceedings involved the same substantial controversy, namely, representation of the Potlatch Company's employees; and therefore the material issues were the same except that in the later proceedings the C.I.O. acceded to the decision that a company-wide unit was appropriate and sought representation on that basis. Only a waste of time and money for all concerned would have resulted, in the Board's view, from retracing the ground covered in the earlier hearings. Accordingly, it was entirely proper to treat the later ones as in substance a continuation of them and to proceed with the determination of the other questions relating to representation which the narrow ground of the first decision had made unnecessary to decide.

The Board also maintains that a further hearing was not required in the absence of a showing by petitioners that new issues were presented which required the taking of additional evidence. In its view the procedure to show cause afforded adequate opportunity for petitioners to do this and none of the issues they presented furnished adequate basis either to require holding a further hearing or for refusing to proceed with the election upon the basis proposed.
The Board and the petitioners are at odds therefore concerning the materiality of the issues presented on the show cause procedure and their sufficiency to require further hearing for the presentation of evidence. But, in any event, the Board says that if it was wrong as to this in any respect the error was cured by the full hearing allowed in February, 1944.
[12] Cf. note 9.
[13] We need not determine whether in a situation where no hearing whatever is afforded prior to an election, the failure would be cured by allowing one afterward, whether as a matter of compliance with the statute or with the regulations. That situation is not presented. The proceedings in this case prior to the election afforded opportunity for hearing. At most the hearing was defective, and the opportunity given by the postelection hearing was effective to cure whatever defects may have existed, if any.
[14] Cf. also Buttfield v. Stranahan, 192 U.S. 470, 496-497; Labor Board v. Mackay Radio & Tel. Co., 304 U.S. 333, 350, 351; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 342, 343; United States v. Ju Toy, 198 U.S. 253, 263; Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 235; Phillips v. Commissioner, 283 U.S. 589, 596-597.