## NATIONAL LABOR RELATIONS BOARD v. S. W. EVANS & SON.

### No. 10021.

United States Court of Appeals Third Circuit.

Argued Nov. 22, 1949.

Decided March 31, 1950.

Helen Humphrey, Washington, D. C., (David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, Frederick U. Reel, Thomas F. Maher, Attorneys, National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Geoffrey J. Cunniff, Philadelphia, Pa., (Emanuel G. Weiss, Philadelphia, Pa., John Harper, Philadelphia, Pa., on the brief), attorneys for respondent.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is a petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., as amended by the Labor Management Relations Act of 1947, 61 Stat. 136, 29 U.S.C.A. § 141 et seq., to enforce its order against the respondent, issued on January 17, 1949, following proceedings under Section 10 of the amended Act. The findings of fact, conclusions of law, and order of the Board are reported in 81 N.L.R.B. 161. Previously there was a representation pro·

ceeding the record of which forms a part of this case, and the decision of the Board together with its certification are reported in 75 N.L.R.B. 811.

The questions at issue here are (1) whether the certification of representatives was proper in view of the denial to the respondent of a pre-election hearing, and (2) whether the respondent was denied a fair hearing with respect to alleged unfair labor practices because of the deletion of a portion of its motion for a bill of particulars.

On February 19, 1947, the American Federation of Labor ("Union") filed with the Board pursuant to Section 9 of the National Labor Relations Act, a petition for certification as exclusive representative of certain employees of the respondent. Its petition declared the appropriate unit to include "Production and Maintenance Employees including leadmen, guards, and/or watchmen, inspectors and factory clerical employees" but excluded foremen and supervisory employees. The respondent sought a pre-election hearing, contending that there existed substantial issues with respect to the appropriate unit and with respect to eligibility to vote. It further appears that the respondent contemplated, and was in the process of, reducing the number of its permanent employees; nevertheless the Regional Director determined to hold the election prior to any hearing, and notice thereof was mailed to the respondent's employees. The notice stated that those employees eligible to vote were "all production and maintenance employees * * * who were employed * * * during the payroll period ending Saturday, March 29, 1947" except, "office clerical employees, foremen, and any other supervisory employees with authority to hire, promote, discharge, discipline or otherwise effect changes in the status of employees, or effectively recommend such action." The respondent had, in accordance with the request of the Regional Director, submitted its payroll for the period ending March 29, 1947, but in doing so called attention to the fact that a large number had been permanently discharged.

The election was held on April 30, 1947. A total of 82 of respondent's employees actually voted, of whom 54 cast ballots for, and one against, the Union. The remaining 27 ballots were challenged by a Board representative in the absence of participation in the holding of the election by the respondent.

On June 25, 1947, a hearing was had before a hearing officer. The respondent did not present evidence in its behalf, but moved to dismiss the petition for certification on three grounds, only two of which are here pertinent: (1) the respondent was entitled to a pre-election hearing to determine the appropriate unit and those employees eligible to vote, and (2) the vote as reflected in the tally of ballots did not indicate that the Union had been selected by a representative number of respondent's employees.

In its decision, the Board noted that the payroll list indicated 307 eligible voters. It found, however, that only 176 employees were eligible to vote, since 113 had been laid off by the respondent prior to election and 18 others were supervisors ineligible to vote. Accordingly, of the 27 challenged ballots, the Board found that the challenges to 24 should be sustained because the voters had been permanently released from employment, and that one challenge should be overruled, according to the stipulation of the parties. As to the remaining two challenged ballots, the Board sustained one, as cast by a supervisory employee, and overruled the other, finding as fact that the employee involved was not performing work of a supervisory nature. Further, the Board determined that guards, watchmen and factory as well as office clericals at the respondent's plant should not be included in the collective bargaining unit; this, of course, was contrary to the statement of eligible voters contained in the Notice of Election. Finally, the Board overruled the respondent's contentions that it was entitled to a pre-election hearing and that the election was not representative, and it certified the Union. 75 N.L.R.B. 811.

Thereafter, the respondent refused to bargain with the Union. Upon a charge by the Union, the Board on April 2, 1948, issued its complaint alleging that the respondent had violated Section 8(a) (5) of

the amended Act by its refusal to bargain, and additionally alleged other unfair labor practices between November, 1946, and January, 1948, in violation of Section 8(a) (1) of the amended Act. Prior to hearing on the complaint, the respondent presented a motion for a bill of particulars seeking specific information with respect to (1) the names of its officers or employees who allegedly committed the unfair labor practices within Section 8(a) (1), and (2) the times or approximate times thereof. The Trial Examiner required answer to the first request alone.

At the hearing in the complaint proceeding, the respondent sought to justify its refusal to bargain with the Union on the same grounds it asserted throughout the representation proceeding. It sought to show that prior to the election it had insisted that it be heard on the matter of the appropriate unit and on its claim that a current reduction in force would affect the unit and the election. It urged that these were issues of a substantial nature and should have been resolved by the Board before the election was held. The offer was rejected by the Trial Examiner, on the ground the evidence was not new or unavailable at the post-election hearing of June 25, 1947. This position was sustained by the Board, which adopted the Intermediate Report, and directed the respondent to cease and desist from its wrongful prac-

tices and to take certain affirmative action typical in such cases. 81 N.L.R.B. 161.

. The governing statute on the issue, whether the respondent was entitled to a pre-election hearing, is Section 9(c) of the National Labor Relations Act, 49 Stat. 453, 29 U.S.C.A. § 159(c).[1] We note in this connection that the instant problem is hardly apt to recur, since the amended Act now makes mandatory a pre-election hearing.[2]

In Inland Empire Dist. Council, Lumber and Sawmill Workers Union, Lewiston, Idaho v. Millis, 1945, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877, the Supreme Court determined that a defective pre-election hearing was cured by an adequate post-election hearing. Although the Court refused to hold that "only a hearing prior to an election can be 'appropriate' within the section's meaning",[3] it nevertheless did not find it necessary to determine "whether in a situation where no hearing whatever is afforded prior to an election, the failure would be cured by allowing one afterward, whether as a matter of compliance with the statute or with the regulations."[4]

We may assume, for the purposes of this case, that the statute would not render void, in some instance, a procedure which fails to accord a hearing prior to an election. Moreover, we need not determine whether we are presented with a situation in which the statute may be said to control on the issue of a pre-election hearing. For, in our view, the solution to the problem presented

1. "Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under Section 10 [29 U.S.C.A. § 160] of this title or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives."

2. Labor Management Relations Act of 1947, 61 Stat. 143, 29 U.S.C.A. § 159(c):
"(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the

Board * * * the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof." This amendment became effective on August 22, 1947.

3. 325 U.S. 697, 707, 65 S.Ct. 1316, 1322, 89 L.Ed. 1877.

4. 325 U.S. 697, 710, note 13, 65 S.Ct. 1316, 1323, 89 L.Ed. 1877.

is to be found in the Rules and Regulations of the Board.

Previous to November 27, 1945, the Rules and Regulations of the Board provided for a hearing prior to investigation.[5] On that date, an amendment was made which permitted the Regional Director to institute an investigation in proper situations, with the further statement that "At any stage of the investigation, either before hearing or after hearing but before transfer of the case to the Board, the regional director may in cases which present *no substantial issues*, conduct a secret ballot of the employees, or he may decline to continue the investigation." [6] (emphasis supplied) The Board declared, at the time the amendment was effectuated, that "This procedure will supplement and not replace existing procedures. It will be applied *only in those cases where the union and employer are either in complete agreement or substantially in accord as to the details and scope of the election.*" [7] (Emphasis supplied.) And in Matter of E. R. Squibb & Sons, 67 N.L.R.B. 557 (1946), the Board said, at page 557, note 1, that "By amendment of November 27, 1945, this Section of the Rules now permits the conduct of a secret ballot of employees prior to hearing in cases which present no substantial issues." It further stated in the same case, at page 558, that "The amendment * * * was designed to facilitate the determination of the question of representation in cases where no substantial issue under the Act was present." This construction of the amendment is consistent with the Board's "Statement of Procedure" accompanying the Rules and Regulations, Series 4.[8] And in the instant case, the petitioner has stated that the purpose of the amendment was to expedite the handling of representation cases in which the only issue was whether the Union in fact commanded a majority.[9]

Accordingly, we are of the opinion that at the times here involved the Rules and Regulations of the Board, albeit placing in the Regional Director the initial determination as to whether substantial issues existed, nevertheless provided for the procedures prior to amendment where such issues were presented. We do not deem National Labor Relations Board v. National Plastic Products Co., 4 Cir., 1949, 175 F.2d 755, 758, inconsistent, since there the Court evidently concluded that no substantial issues were raised, and the Inland Empire decision was cited to support the procedure adopted by the Board in that instance pursuant to the amendment to which reference has been made. With the latter conclusion we are not called upon to disagree in the instant case, at least on the view we take.

The respondent in the case *sub judice* at the very outset of the representation proceedings raised the question of the effect of the reduction in its working forces with respect to unit, eligibility to vote and timeliness of the election. It should be noted, in this connection, that the Notice of Election announced that those eligible to vote were the employees on the respondent's payroll for the period ending March 29, 1947. Thus, the "tally of ballots" disclosed 307 eligible voters, but the Board ultimately found, after the election, that by reason of the permanent separation of employees

---

5. Rules and Regulations, Series 3, 8 F.R. 16052, 29 C.F.R., 1943 Supp. § 203.3: "After a petition has been filed, if it appears to the regional director that an investigation should be instituted he shall institute such investigation by issuing a notice of hearing * * *."

6. Amendment to Rules and Regulations, Series 3, 10 F.R. 14498, 29 C.F.R. 1945 Supp., § 203.1, note 1. This amendment was incorporated in the Rules and Regulations, Series 4, effective September 11, 1946, 11 F.R. 177A-605, 29 C.F.R., 1946 Supp., § 203.49, note 3.

7. National Labor Relations Board Release (R-6118), November 28, 1945; Board's brief, page 43.

8. 29 C.F.R., 1946 Supp., § 202.18: "Formal hearing. If no informal adjustment of the question concerning representation has been effected, the Regional Director will recommend that formal procedures be taken. These may take the form of either (a) an immediate election followed by a hearing, if the case presents no issues of such substance as to require final decision by the Board before a proper election may be held * * *."

9. Board's brief, page 16.

there were only 176 eligible voters. Moreover, the respondent sought to raise issues with respect to the appropriate unit, in which the Union sought to include "leadmen", factory clericals, guards and watchmen,[10] and which issues placed in controversy the status of certain of respondent's shipping department employees as well as its truck driver. It is a simple matter, from the vantage point of hindsight, to determine the substantiality of issues raised, as the petitioner suggests, on the basis of election results which, fortuitously, may be such as could remain unaffected by the ultimate conclusion of those issues. But the problem of substantiality, in our view, is one to be determined prospectively. Indeed, were it otherwise, the very purpose of the amendment to the Rules and Regulations, to avoid delay, would be annulled. We are of the opinion that the respondent here raised substantial issues and under the Rules and Regulations of the Board it was entitled to a pre-election hearing.

 Finally, the respondent seeks to prevent enforcement of that portion of the Board's order premised upon violations of Section 8(a) (1) of the amended Act. That there was substantial evidence to support the findings of the Board on this score is not now disputed. But the respondent directs attention to its motion for bill of particulars the content of which has already been stated. The contention is that it was not enough to require disclosure of information relating to the identity of those in its employ who were alleged to have indulged in prohibited conduct and for whose actions it was responsible, but that it was further necessary for adequate preparation and prosecution of its defense to have the requested information relating to the times when the violations occurred. Therefore, it urges the view that it was deprived of a fair hearing as a result of the refusal to direct such compliance with its bill of particulars as would have yielded the latter information. However, an examination of the record fails to reveal that any prejudice

of a measurable degree accrued to the respondent through the ruling complained of. The complaint stated, in Paragraph 8, with reasonable specificity in seven sub-paragraphs the nature of the violations alleged to have been committed during a period of about fourteen months from November, 1946, to January 19, 1948. In accordance with the ruling on the respondent's bill of particulars, the respondent was furnished with the names of its employees alleged to have committed each of the types of violations referred to in the sub-paragraphs. Under the particular circumstances of the case, we believe the information surrendered was sufficient, at least absent any special showing of detriment by the respondent, to enable it to meet the charges.

For the reasons stated, the order of the Board will be enforced insofar as it relates to Section 8(a) (1) of the amended Act, but not insofar as it relates to Section 8(a) (5) thereof.

---

10. Although the guard and watchmen were finally excluded from the appropriate unit by the Board, it is not inappropriate to note here that the record reveals that at least two of this group did vote in the election and were not challenged.