NATIONAL MARITIME UNION OF AMERICA, AFL–CIO, Plaintiff,

v.

Ivan McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, and Seafarers International Union of North America, Atlantic and Gulf District, AFL–CIO, Defendants.

United States District Court
S. D. New York.
March 27, 1958.

Cooper, Ostrin & De Varco, New York City, for plaintiff. H. Howard Ostrin, Herman E. Cooper, George A. Nicolau, New York City, of counsel.

Seymour W. Miller, Brooklyn, N. Y., for Seafarers International Union of North America.

Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Norton J. Come, Duane B. Beeson, Attys., National Labor Relations Board, Washington, D. C.

John J. Cuneo, Chief Law Officer, National Labor Relations Board, Second Region, New York City, for defendant Ivan C. McLeod, Regional Director of the National Labor Relations Board for the Second Region.

SUGARMAN, District Judge.

On December 20, 1957, the plaintiff National Maritime Union of America, AFL-CIO (hereinafter NMU), filed a complaint in this court against Ivan McLeod, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board (hereinafter McLeod), seeking a permanent injunction for certain relief against defendant.

McLeod now moves to dismiss the complaint; NMU moves for a preliminary injunction. Seafarers International Union of North America, Atlantic and Gulf

District, AFL-CIO (hereinafter SIU), was permitted to intervene.

The complaint sets forth in substance the following facts:

In January of 1938 the National Labor Relations Board (hereinafter NLRB) certified the National Maritime Union of America, affiliated with the Committee for Industrial Organization, as the collective bargaining representative on all vessels operated out of Atlantic and Gulf ports by Mooremack Gulf Lines, Inc. Prior to May, June and July 1957, the unlicensed personnel employed in the deck, engine and steward's departments, with certain exceptions not here important, on eight vessels then operated by Seas Shipping Company, Inc. (hereinafter Seas Shipping), were represented in collective bargaining by SIU. The eight vessels were part of what was known as the 'Robin Fleet.' During May, June and July 1957 Moore-McCormack Lines, Inc. (successor to Mooremack Gulf Lines, Inc.) took possession of the eight 'Robin' vessels which it had purchased from Seas Shipping and they became part of a fleet of 36 vessels operated by Moore-McCormack Lines, Inc. (hereinafter Mooremack) out of Atlantic and Gulf ports. These eight vessels were the S.S. Robin Sherwood, the S.S. Robin Trent, the S.S. Robin Hood, the S.S. Robin Locksley, the S.S. Robin Goodfellow, the S.S. Robin Gray, the S.S. Robin Kirk, and the S.S. Robin Mowbray. On August 9, 1957 SIU filed with NLRB eight petitions for certification as bargaining representative on each of the said vessels, or, in the alternative, on all eight vessels as a block. On August 22, 1957, a conference was held between McLeod, SIU and NMU. At that conference NMU opposed the applications of SIU upon the grounds that (a) NMU had a contract with Mooremack covering all of Mooremack's vessels plying out of Atlantic and Gulf ports which would not expire until June 15, 1958, and (b) the eight 'Robin' vessels, either as a unit or individually, were not an appropriate unit for collective bargaining.

On September 16, 1957, a four-day hearing commenced before a hearing officer of NLRB, at which NMU, having been permitted to intervene, SIU and Mooremack appeared and participated. The sole issue to which the hearing addressed itself was the appropriate unit for collective bargaining on the eight 'Robin' vessels. After the closing of the hearing (which the parties on argument agreed was September 20, 1957), the record of the hearing, which is incorporated in the complaint by reference, was transmitted to the NLRB for decision and briefs were thereafter filed by the parties (which it was agreed at the argument of the motions was about October 17, 1957).

On November 8, 1957, without according NMU oral argument which it had requested (when it filed its brief with the NLRB, as agreed by the parties upon argument) NLRB issued a Decision and Direction of Elections, wherein it provided for elections to be held on each of the eight vessels.*

* The Board's Decision and Direction of Elections stated, in part, that

"We believe that the unlicensed personnel on board each vessel involved herein may appropriately constitute a separate unit [1] or may appropriately be represented in a unit together with the unlicensed personnel presently represented by the Intervenor. [NMU was the Intervenor before the Board.] We shall therefore direct 8 separate elections among the following groups of employees:

"All unlicensed personnel, excluding pursers, radio operators, and supervisors as defined in the Act, employed on each of the following 8 vessels: (a) the S.S. Robin Sherwood; (b) the S.S. Robin Trent; (c) the S.S. Robin Hood; (d) the S.S. Robin Locksley; (e) the S.S. Robin Goodfellow; (f) the S.S. Robin Gray; (g) the S.S. Robin Kirk; (h) the S.S. Robin Mowbray.[2]

"[1] See Permanente Steamship Corporation, 96 NLRB 827; Nicholson Transit Company, 85 NLRB 955; American Steel and Wire Co. of New Jersey, 63 NLRB 1244.

"[2] If in these elections a majority of the employees in any of the above voting groups select the Petitioner, [SIU was the Petitioner before the Board]

After November 8 McLeod conducted elections on the 'Robin' vessels. (It was agreed at the argument that seven of these elections were conducted before the complaint was filed and one after, to wit:

November 20, 1957, the S.S. Robin Sherwood

November 22, 1957, the S.S. Robin Gray

November 26, 1957, the S.S. Robin Kirk

November 27, 1957, the S.S. Robin Locksley

December 5, 1957, the S.S. Robin Mowbray

December 12, 1957, the S.S. Robin Trent

December 18, 1957, the S.S. Robin Goodfellow

January 15, 1958, the S.S. Robin Hood.)

NMU participated in the elections, reserving its right to challenge the validity thereof in court.

On November 19, 1957 (which appears to be the day before the first election) NMU requested reconsideration by NLRB of its Decision and Direction of Elections. (It appeared upon the argument that the American Merchant Marine Institute, an organization of shipping interests, joined in the application for the reconsideration.) On November 20 NLRB denied NMU's request for reconsideration.

McLeod certified SIU as the collective bargaining representative on four of the vessels, to wit, the S.S. Robin Sherwood, the S.S. Robin Gray, the S.S. Robin Kirk and the S.S. Robin Locksley. (Upon argument the parties agreed that the cer-

tification as to these four vessels took place on December 6, 1957, and that they represented the first four elections held.)

McLeod certified NMU as the collective bargaining representative on the S.S. Robin Mowbray. (Upon argument the parties agreed that the certification as to this vessel took place on December 16, 1957, and that it represented the fifth election held.)

After SIU was certified on the S.S. Robin Sherwood, the S.S. Robin Gray, the S.S. Robin Kirk and the S.S. Robin Locksley, Mooremack commenced bargaining with SIU for those four vessels and hired unlicensed personnel therefor from SIU's hiring hall. The complaint further alleges that McLeod will certify SIU as collective bargaining representative for other of the vessels (presumably those on which it won the elections).

Plaintiff NMU then seeks a permanent injunction and order (a) restraining McLeod from giving effect to the Board's Decision and Direction of Elections issued on November 8, 1957; (b) directing McLeod to rescind all certifications of representatives heretofore given; and (c) enjoining McLeod from issuing certifications pursuant to the Board's Decision and Direction of Elections.

As will be seen from the above-quoted Decision and Direction of Elections, the Board left the ultimate determination of the bargaining unit to the affected seamen. Any vessel ultimately won by NMU would become part of the existing fleet unit covered by the present agreement between NMU and Mooremack; any vessel won by SIU would become a separate unit for bargaining between

they will be taken to have indicated their desire to constitute separate appropriate units and the Regional Director conducting the elections directed herein is instructed to issue certifications of representatives to the Petitioner for such units as described in paragraph numbered 4, which the Board, under such circumstances, finds to be appropriate for purposes of collective bargaining. In the event a majority of the employees in any of the above voting groups select the Intervenor, they will be taken to

have indicated a desire to be added to the bargaining unit presently represented by the Intervenor and the Regional Director will issue a Certification of Representatives to such effect. In view of the fact that the Petitioner has in the past bargained for all the employees on the vessels involved herein on a single multiship unit basis, it may, if it so desires, continue to do so with respect to any of the units for which it is selected as the bargaining representative." [Matter in brackets added.]

SIU and Mooremack or part of a block to be bargained for by SIU as it might choose.

Under the circumstances the technique employed by NLRB was proper;[1] nor do I understand that NMU complains thereof.[2] Plaintiff rather finds fault with the Board for allegedly not having made its decision on the record of the representation hearing.[3]

■ McLeod urges that this court lacks jurisdiction of NMU's suit. If NMU is to prevail in its assertion of jurisdiction in this court it must show "that the Board has acted unlawfully," [4] either "by way of departure from statutory requirements or from those of due process of law." [5]

I cannot discern anything in the record of the NLRB Examiner's hearing which constitutes the Board's having exceeded its statutory authority,[6] i. e., having assumed a power with which it was not invested or which was specifically denied to it.

That leaves the charge that the Board denied NMU due process. It is admitted that

"There was an investigation; there was a hearing; there were briefs, and then there was a decision. But * * * notwithstanding the full and complete hearing which was afforded all parties * * * there is not a scintilla of evidence that can be found in this record which can in any way support the kind of unit which the Board found * * * * " [7]

The "nub" [8] of NMU's charge is that stated in the complaint:

"21. Examination of the testimony and evidence adduced at the hearing unequivocally demonstrates that not a single strand of competent proof was offered to support the contention that either eight single-ship units or a combined unit of eight ships was appropriate for the purposes of collective bargaining.

"22. To the contrary, every facet of the record, however viewed, emphatically demonstrated that the only conceivable type of unit appropriate for bargaining purposes was a fleetwide unit or a multi-employer unit. This holds true from whatever standpoint the record is evaluated, e. g., collective-bargaining history and precedents, maritime employment procedures, the functional operation of the Mooremack enterprise, the frequency of inter-company vessel transfers, the structure of

1. N. L. R. B. v. Local 404, 1 Cir., 1953, 205 F.2d 99.

2. S. M., March 11, 1958, p. 125, where plaintiff's counsel upon the argument of the motions stated:

"If we can satisfactorily establish on the basis of the record that this Board made its decision outside of the record, then we say that this Court has original jurisdiction, and we are not necessarily quarreling with the unit finding, although that, of course, comes into the picture, but we are quarreling with the procedures which the board utilized and which we claim were violative of due process."

3. Ibid.: " * * * it is one thing for imposing a requirement upon an administrative agency to predicate its findings based upon the record, whether the decision is correct or incorrect, and it is another thing to countenance the kind of action which we charge the Board with having committed in not having paid any attention to the record at all * * * "

4. Inland Empire Dist. Council, Lumber & Sawmill Workers Union, Lewiston, Idaho v. Millis, 1945, 325 U.S. 697, 700, 65 S.Ct. 1316, 1318, 89 L.Ed. 1877.

5. Ibid.

6. Cf. Leedom v. International Union, 1956, 352 U.S. 145, 77 S.Ct. 154, 1 L. Ed.2d 201; Leedom v. Kyne, 1957, 101 U.S.App.D.C. 398, 249 F.2d 490; Farmer v. International Fur & Leather Wkrs. Union, 1955, 95 U.S.App.D.C. 308, 221 F.2d 862; Farmer v. United Electrical, Radio & Machine Workers, 93 U.S.App.D.C. 178, 211 F.2d 36, certiorari denied 1954, 347 U.S. 943, 74 S.Ct. 638, 98 L.Ed. 1091.

7. S. M., March 11, 1958, p. 111, argument of the motions; statement by plaintiff's counsel.

8. Ibid.

industry-wide pension, welfare, vacation, and unemployment security funds, and many other considerations unnecessary to detail."

Thus, in essence NMU charges that because, in its opinion, the record cannot sustain the Board's determination, that decision was not based upon the record. With this contention I cannot agree.

NMU's own admission in paragraph 9 of its complaint that

"9. At the time the Robbin vessels were operated by Seas Shipping Company, the unlicensed seamen employed aboard were represented by the Seafarers International Union of North America, Atlantic and Gulf District, (hereinafter called SIU) AFL-CIO,"

NMU's counsel's stipulation at the representation hearing that Mooremack continued the employment of the SIU men who were aboard the vessels which it acquired from Seas Shipping [9] and dealt with SIU representatives on grievances of the personnel [10] afford ample basis for the determination which the Board made.

NMU's assertion that there was no basis for the Board's Decision and Direction of Elections in the light of the foregoing admissions by it manifests "transparent frivolity"[11] of the asserted constitutional basis of jurisdiction.

Although under federal 'notice' pleading a complaint should not be dismissed for failure to set forth evidentiary facts [12] upon which jurisdiction may be based, NMU has nowhere in the record indicated that its claim is buttressed by anything more than the conclusion that, because it lost, the Board ignored the record.

McLeod's and SIU's motions to dismiss the complaint are granted. NMU's motion for a preliminary injunction having thus become moot is accordingly denied.

It is so ordered.

9. S.'M., Hearing before NLRB Examiner, September 16, 1957, p. 124.

10. S. M., hearing before NLRB Examiner, September 17, 1957, p. 169.

11. Fay v. Douds, 2 Cir., 1949, 172 F.2d 720, 723.

12. Cf. Nagler v. Admiral Corporation, 2 Cir., 1957, 248 F.2d 319.