# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 21, 2019   Decided April 19, 2019

No. 18-1161

UPS GROUND FREIGHT, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL UNION
No. 773,
INTERVENOR

———

Consolidated with 18-1182

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Kurt G. Larkin* argued the cause and filed the briefs for petitioner. *James P. Naughton* entered an appearance.

*David R. Broderdorf* and *Jonathan C. Fritts* were on the brief for *amici curiae* UPS Ground, et al. in support of petitioner.

2

*Mark W. Mosier*, *Kevin King*, *Steven P. Lehotsky*, and *Michael B. Schon* were on the brief for *amicus curiae* The Chamber of Commerce of the United States of America in support of petitioner and cross-respondent.

*Eric Weitz*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Peter B. Robb*, General Counsel, *John W. Kyle*, Deputy General Counsel, *David Habenstreit*, Associate General Counsel, and *Kira Dellinger Vol*, Supervisory Attorney.

Before: GARLAND, *Chief Judge*, SRINIVASAN, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: UPS Ground Freight, Inc. challenges the certification of a union at its Kutztown, Pennsylvania distribution facility. The National Labor Relations Board rejected UPS Ground's challenges to the union's certification and then determined that the company committed unfair labor practices by declining to bargain with the union. UPS Ground now seeks review in this court. We deny UPS Ground's petition for review and grant the Board's cross-application for enforcement.

I.

UPS Ground Freight, Inc., a subsidiary of United Parcel Service, Inc., provides transportation and delivery services throughout the United States. On December 10, 2015, International Brotherhood of Teamsters, Local 773, filed a petition with the Board seeking a representation election among all drivers at UPS Ground's distribution center in Kutztown, Pennsylvania. The Acting Regional Director

scheduled a pre-election hearing for December 21, at which the parties presented evidence on the supervisory status of Frank Cappetta, one of the drivers employed at the Kutztown center. On January 5, 2016, the Acting Regional Director directed a mail-ballot election at the Kutztown distribution center. The Acting Regional Director did not rule on the supervisory status of Cappetta.

The election occurred between January 11 and January 29. By a vote of twenty-seven to one, the employees voted in favor of representation by the union. UPS Ground sought review with the National Labor Relations Board.

On July 27, 2017, the Board issued a Decision on Review and Order. The Board found that Cappetta was not a statutory supervisor and that, in the alternative, he did not engage in objectionable conduct if he were a supervisor. On all other grounds, the Board denied review.

Subsequently, the Union made a formal request to bargain, and UPS Ground refused. The Board's General Counsel issued an unfair-labor-practice complaint, and the Board found that UPS Ground had committed unfair labor practices by refusing to bargain. UPS Ground petitions this Court for review, and the Board cross-petitions this Court for enforcement.

## II.

Because UPS Ground has not identified a defect in the Board's decision to certify the Union, we deny UPS Ground's petition for review and grant the Board's cross-application for enforcement.

First, the Board certified an appropriate bargaining unit. Under the Act, a bargaining representative must be selected "by

the majority of the employees in a unit *appropriate* for [collective bargaining] purposes." 29 U.S.C. § 159(a) (emphasis added). "The Board need only select *an* appropriate unit, not *the* most appropriate unit." *Cleveland Constr., Inc. v. NLRB*, 44 F.3d 1010, 1013 (D.C. Cir. 1995) (emphases added). Under controlling Board precedent, a single-facility bargaining unit is "presumptively appropriate." *Cmty. Hosps. of Cent. Cal. v. NLRB*, 335 F.3d 1079, 1084 (D.C. Cir. 2003). To assess that presumption in a given case, the Board considers "geographic proximity, employee interchange and transfer, functional integration, administrative centralization, common supervision, and bargaining history." *Id.* at 1085 (quoting *W. Jersey Health Sys.*, 293 NLRB 749, 751 (1989)).

Here, the Acting Regional Director reasonably found (and the Board ratified) that those factors favored a single-facility bargaining unit, rather than a unit encompassing all of UPS Ground's facilities. In particular, the Acting Regional Director reasonably relied on "the significant evidence of local autonomy over labor relations matters at the Kutztown facility" and "the considerable distance between the Kutztown facility and the other facilities." J.A. 677. We see no basis to set aside the Board's choice of bargaining unit.

Second, the Board reasonably determined that Cappetta was an "employee" under the Act and not a statutory "supervisor" who would be excluded from the Act's protections. Generally, if a supervisor's conduct "reasonably tends to have such a coercive effect on . . . employees that it is likely to impair their freedoms of choice in the election," that conduct can taint an election and require its results to be set aside. *Salem Hosp. Corp. v. NLRB*, 808 F.3d 59, 63 (D.C. Cir. 2015) (alterations omitted). Here, however, the Board properly concluded that Cappetta was not a supervisor, which renders irrelevant the question of taint.

UPS Ground argues that Cappetta performed four supervisory functions—namely, that he assigned work, made hiring recommendations, directed employees, and adjusted grievances. The Board reasonably rejected each of those claims. The authority to assign work requires that the employee "ha[ve] the ability to *require* that a certain action be taken." *Golden Crest Healthcare Ctr.*, 348 NLRB 727, 729 (2006). And the evidence supports the conclusion that Cappetta lacked the authority to require a driver to accept a particular route; rather, if a driver objected, Cappetta was obligated to refer the matter to management. As for the ability to make hiring recommendations, the Board explains that Cappetta had input only insofar as he administered road tests to new hires and reported the results to management. The Board has consistently found that such involvement in the hiring process does not establish supervision. *See, e.g.*, *Pac. Beach Corp.*, 344 NLRB 1160, 1161–62 (2005). The last two alleged supervisory functions—the direction of employees, and the adjustment of grievances—find even less support in the record. For someone to direct employees, that person must be "accountable for the performance of the task by the [employees]." *Oakwood Healthcare, Inc.*, 348 NLRB 686, 692 (2006). UPS Ground points to no record evidence that Cappetta was so accountable. As for the authority to adjust grievances, it does not appear that Cappetta had the authority to resolve *any* disputes. At most, Cappetta had the authority to "bring any minor grievances to the attention of upper management for resolution," which does not suffice. *Ken-Crest Servs.*, 335 NLRB 777, 779 (2001).

UPS Ground would have us look to additional evidence of supervisory status, detailed in an offer of proof filed in support of its objections to the election results. But neither the Acting Regional Director nor the Board had an obligation to consider belatedly-presented evidence. "[T]he Board need not afford a

party objecting to a representation hearing more than one opportunity to litigate any particular issue," *Sitka Sound Seafoods, Inc. v. NLRB*, 206 F.3d 1175, 1182 (D.C. Cir. 2000), and UPS Ground received that opportunity at the pre-election hearing.

UPS Ground's remaining objections to the application of the Board's rules and regulations all lack merit. (UPS Ground has disclaimed a facial challenge to the Board's rules.) Various of UPS Ground's objections challenge the Acting Regional Director's failure to permit an all-embracing investigation of Cappetta's actions leading up to the election. Those objections all fail for the simple reason that the Board reasonably concluded that Cappetta was not a statutory supervisor. Thus, UPS Ground cannot demonstrate the requisite "prejudice" from any of those alleged errors. *Salem Hosp.*, 808 F.3d at 70.

Nor do any of UPS Ground's other objections carry the day. For example, UPS Ground argues that the pre-election hearing timeline was abusive because it allotted only eleven days to prepare for the hearing. The Acting Regional Director, though, was required by regulation to schedule the pre-election hearing on the eighth day after the Union petition. *See* 29 C.F.R. § 102.63(a)(1). Further, the Acting Regional Director partially granted UPS Ground's motion for a two-business-day postponement of the pre-election hearing. The Acting Regional Director did not abuse his discretion by complying with the regulation. And the decision to postpone the hearing by one business day, but not two, is in the heartland of his discretion. That timeline also comported with due process. Even assuming that due process requires any pre-election hearing whatsoever, *but see Inland Empire Dist. Council v. Millis*, 325 U.S. 697, 710 (1945), an eight-day notice accords with both the Due Process Clause and UPS Ground's statutory right to an "appropriate" hearing, 29 U.S.C. § 159(c)(1).

Next, UPS Ground argues that it was prejudiced by the timeline because it was required to file a Statement of Position on the business day before the hearing. UPS Ground, though, cannot show any prejudice from that requirement, as the Statement of Position is not binding. The Regional Director "may permit the employer to amend its Statement of Position in a timely manner for good cause." 29 C.F.R. § 102.63(b)(1). Nor does the Statement of Position preclude the Regional Director from "direct[ing] the receipt of evidence concerning any issue . . . as to which the regional director determines that record evidence is necessary." *Id.* § 102.66(b). And despite UPS Ground's contention that its Statement of Position limited it to calling only certain witnesses at the pre-election hearing, at no point during this litigation has UPS Ground ever identified any additional witnesses it would have called at the hearing.

UPS Ground also challenges various rulings made by the hearing officer during the pre-election hearing—specifically, that the hearing officer asked UPS Ground for certain documents that UPS Ground did not possess, denied UPS Ground's request to grant a one-day adjournment for preparation for closing arguments, and refused the filing of posthearing briefs. None of those rulings was an abuse of discretion. A demand for documents is not an adverse ruling, in any sense. The denial of an adjournment was entirely proper, especially given that the regulations do not require even a *recess* prior to closing arguments. *See* 29 C.F.R. § 102.66(h). And UPS Ground had no entitlement to posthearing briefs, which "shall be filed only upon special permission of the regional director." *Id.*

The Acting Regional Director also properly directed a mail-ballot election. A mail-ballot election is proper when voters are "scattered" over a wide area or across different work

schedules. *San Diego Gas & Elec.*, 325 NLRB 1143, 1145 (1998). In this case, the Acting Regional Director reasonably determined that the employees travel long distances and that traffic and weather conditions, particularly in winter, might hinder employees from returning to the facility in time to permit them to vote. The Acting Regional Director reasonably rejected UPS Ground's alternative proposal—to arrange drivers' work schedules so they could vote before leaving on their assigned routes—which, by UPS Ground's own characterization, would have ensured the ability to vote only of "*most* of [the drivers] before they go." J.A. 320 (emphasis added). And the mail-ballot election did not impermissibly restrict UPS Ground's right to campaign. The Act proscribes only mass captive-audience assemblies (for employer and union alike) during a mail-ballot election. *See San Diego Gas*, 325 NLRB at 1146. UPS Ground was still free to campaign via other means. More generally, it is difficult to imagine any prejudice arising from the choice of a mail-ballot election when 94% of eligible voters cast ballots and those ballots overwhelmingly favored unionization. *Cf. Kwik Care Ltd. v. NLRB*, 82 F.3d 1122, 1127 (D.C. Cir. 1996).

Finally, the Acting Regional Director did not abuse his discretion by declining to decide, before the election, whether two employees in disputed job classifications (safety instructors and dispatchers) were part of the bargaining unit. It is common practice to permit such employees to vote under challenge. *See Kirkhill Rubber Co.*, 306 NLRB 559, 559 (1992). Nor does that practice imperil the bargaining unit's right to make an informed choice, so long as the notice of election—as happened here—"alert[s] employees to the possibility of change" to the definition of the bargaining unit. *Sears, Roebuck & Co. v. NLRB*, 957 F.2d 52, 55 (2d Cir. 1992).

9

* * * * *

For the foregoing reasons, we deny the petition for review and grant the Board's cross-application for enforcement.

*So ordered.*