**The U. S. PILLOW CORPORATION,**
Plaintiff,

v.

**Ivan C. McLEOD, Individually and as Regional Director, Second Region, National Labor Relations Board, Defendant.**

United States District Court
S. D. New York.

July 30, 1962.

Havens, Wandless, Stitt & Tighe, New York City, for plaintiff; Robert L. Tofel, Joseph O. Giaimo, New York City, of counsel.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Herman M. Levy, Attys., N. L. R. B., and Samuel Kaynard, Regional Atty., N. L. R. B., Second Region, for defendant.

Rabinowitz & Boudin, New York City, for Bedding, Curtain & Drapery Workers Union, Local 140, United Furniture Workers of America, AFL–CIO; Leon-

ard B. Boudin, New York City, of counsel.

**FREDERICK van PELT BRYAN, District Judge.**

Plaintiff, The U. S. Pillow Corporation (U. S. Pillow), sues to enjoin defendant Regional Director for the Second Region of the National Labor Relations Board (the Regional Director) from conducting a representation election of the employees of U. S. Pillow on the petition of the Bedding, Curtain and Drapery Workers Union, Local 140, United Furniture Workers of America, AFL–CIO (Local 140). After the action was instituted plaintiff consented for practical reasons to the election being held and the ballots being impounded. That procedure was followed and the ballots cast in the election have been impounded accordingly and have not been tallied.

There are three motions now before me.

1. A motion by Local 140 for permissive intervention pursuant to Rule 24 (b), F.R.Civ.P. 28 U.S.C.;

2. A motion by U. S. Pillow for an injunction pendente lite continuing the impounding of the ballots cast in the election held on June 29, 1962 and suspending the tallying of the ballots; and

3. A cross-motion by the Regional Director for judgment dismissing the complaint pursuant to Rule 12(b) (1) and (6), or in the alternative for summary judgment pursuant to Rule 56.

The motion to intervene by Local 140 is unopposed and may be disposed of at the outset. Counsel for the Local appeared and participated in the argument of the other two motions with the permission of the court. Local 140 is the petitioning union in the proceedings before the NRLB out of which this controversy arose and plainly has a direct interest in the outcome of the case. Its petition is timely and intervention will not delay or prejudice the adjudication of the rights of the original parties. Its motion to intervene under Rule 24(b) will therefore be granted.

Turning next to the substantive motions, the relevant facts, briefly stated, are as follows:

On January 5, 1960, U. S. Pillow entered into a three year collective bargaining agreement with Local 77, New York District Council, Textile Workers Union (Local 77) which was then the sole collective bargaining agent for U. S. Pillow's non-supervisory and non-office personnel. Several months later, in October of 1960, U. S. Pillow joined The Textile Trades Association, Inc. (Association), a multi-employer collective bargaining unit composed of a number of firms in the textile industry, and agreed to be bound by the three year collective bargaining agreement which the Association had entered into, also with Local 77 on June 27, 1960. The agreement between U. S. Pillow and the Association was supplemented on November 17, 1960, when U. S. Pillow agreed to be bound by renewals, extensions and future agreements under the collective bargaining agreement of June 27 between the Association and Local 77, and further agreed that its liability thereunder would survive termination of its membership in the Association.

Thereafter, on August 21, 1961, Local 140, the intervenor in this litigation, filed with the NLRB a petition for certification as the bargaining agent for the single employer unit, composed of the employees of U. S. Pillow, pursuant to § 9(a) and (c) of the Labor Management Relations Act (29 U.S.C.A. § 159(a) and (c).) U. S. Pillow and Local 819, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 819), successor by merger to Local 77, moved to dismiss that petition on two grounds. They contended: (a) that the collective bargaining agreement between Local 77 and the Association barred the holding of an election at that time; and (b) that the limitation of the proposed election to the single employer unit was inappropriate in view of the fact that U. S. Pillow was a member of the Association.

A hearing was held on these questions before a hearing officer of the NLRB. He found in favor of the petitioning Local and his rulings were found to be free from prejudicial error by the Regional Director and affirmed in a written opinion dated October 12, 1961. The Regional Director's opinion in disposing of U. S. Pillow's first contention held: (1) that Local 140's petition was timely with respect to the January 5, 1960 collective bargaining agreement between Local 77 and U. S. Pillow; (2) that U. S. Pillow's entry into the multi-employer contract of the Association was not a premature extension of its January 5, 1960 collective bargaining agreement with Local 77 because Article 17 of the January 5 agreement afforded preferential treatment to union member employees and therefore would not have constituted a bar to an election at the time that the later agreement was entered into; and (3) that the multi-employer collective bargaining agreement with Local 77 was not a bar to Local 140's petition for an election because that agreement also included provisions which discriminated on the basis of union membership.

The Regional Director also rejected the second contention in opposition and held that

"The contention that only a multi-employer unit is appropriate is without merit in light of the absence of a Board certification, the fact that the Employer engaged in single-employer bargaining before joining the association, and the brevity of the history of multiemployer bargaining which preceded the instant petition.[6]

"6. Miron Building Products Co., et al., 116 NLRB 1406."

A timely request for review of the decision on this phase of the case was filed with the NLRB, and pursuant to § 102.67 of the Board's Rules and Regulations that request was granted on November 14, 1961. Briefs were subsequently submitted but a request for oral argument was denied on the ground that "the record and briefs, in our opinion, adequately present issues and positions of the parties." Case No. 2-RC-11543, p. 1.

The Board reviewed the facts of the case, the Regional Director's decision, and the prior cases in this area with some care. It concluded,

"We find that there is a factual harmony in the cases and that their pattern may be broadly analogized to the Board's contract bar rules. Therefore, we shall continue to adhere to our prior cases but shall restate the holdings thereof in light of our analysis herein. Without attempting at this time to restate rules applicable to all possible factual situations, we hold that where as here there has been a prior bargaining history on an individual basis, a rival petition for a single employer unit will prevail if timely filed before the insulated period of the last individual contract, even if the employer has adopted or joined in a multiemployer contract and whether or not that multiemployer contract would otherwise be a bar to a petition." Case No. 2-RC-11543, p. 4.

The petition having been timely filed, the decision of the Regional Director was affirmed and the case remanded for the holding of a representation election on the single employer unit basis as the petitioner had requested. At that juncture U. S. Pillow instituted this litigation to obtain judicial review of the Board's determination. It asserts here that the Board's decision is in violation of various of its constitutional rights and contends that this court has jurisdiction over these matters under 28 U.S.C. §§ 1331, 1337, and 1343(3). It is defendant's position that the court has no power to hear this case and that it must be dismissed for want of jurisdiction over the subject matter.

On the allegations presently before the court it appears that jurisdiction exists unless it is denied by the review provisions of the National Labor Relations Act (29 U.S.C.A. § 151 et seq.).

Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). At the outset it is clear that § 10(f) of the Act, 29 U.S.C.A. § 160(f), which gives the right of judicial review to any person aggrieved by a final order of the NLRB, is inapplicable because a Board order in a certification proceeding under § 9 is not "a final order". American Federation of Labor v. National Labor Relations Board, 308 U.S. 401 (1940); Leedom v. Kyne, supra.

That, however, does not dispose of the question. "Leedom v. Kyne, supra, must be taken to have determined that, whatever may be the case with respect to orders of the National Mediation Board as to bargaining units, see Switchmen's Union, etc. v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); UNA Chapter, Flight Engineers International Ass'n v National Mediation Board, [111 U.S.App.D.C. 121] 294 F.2d 905 (D.C.Cir 1961), cert. denied [368 U.S. 956] 82 S.Ct. 394, [7 L.Ed.2d 388] (1962), representation orders of the NLRB have not been vested with complete immunity from injunction, either by inferences from the National Labor Relations Act or on the principle of Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L. Ed. 638 (1938). Once that step has been taken, the courts must make up their minds, as best they can, whether in a particular type of case Congress would or would not have wished them to intervene * * *." Empresa Hondurena de Vapores, S.A. v. McLeod, 300 F.2d 222, 228 (2 Cir. 1962).

■ In fact such intervention by district courts has been approved in three narrow and carefully defined areas.[1] Federal district courts have the power to enjoin actions of the NLRB with re-spect to representation, "Where the Board's action is unconstitutional (Fay v. Douds, 172 F.2d 720 (2d Cir. 1949)), contravenes a specific provision of the statute (Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)) or exceeds the jurisdiction of the Board in the field of foreign relations and thereby offends a friendly foreign power (Empresa Hondurena de Vapores v. McLeod, 300 F.2d 222 (2d Cir. 1962))." Consolidated Edison Company of New York, Inc. v. McLeod, 302 F.2d 354, 355 (2 Cir. 1962).

Plaintiff concedes that the second and third of these exceptions do not apply here. The crux of the question of the power of the court to hear this matter is whether plaintiff's claims as to unconstitutionality bring this case within the reasoning of the Second Circuit in Fay v. Douds, supra.

The Regional Director attempts to distinguish the Fay case from the case at bar on several grounds. In the first instance he urges that in Fay the aggrieved party was a union which had been removed from the bargaining relationship by the Board's action and was for that reason precluded from utilizing the review provisions of the Act, whereas here the review provisions of §§ 9(d) and 10(f) of the Act are still available to the plaintiff should it desire to use them.

This distinction which the Regional Director seeks to make is not of significance in determining whether this case fits within one of the exceptional situations involving representation over which this court may properly exercise its jurisdiction. In both Leedom v. Kyne, supra, and Empresa Hondurena de Vapores, S.A. v. McLeod, supra, the courts were also presented with situations in which the plaintiff had not been removed

---

1. It should be noted that direct review of representation determinations was considered and rejected, as a general rule, by Congress in 1935 when the Wagner Act was under consideration (See S.Rep. 573, 74th Cong., 1st Sess.; H.Rep. No. 1147, 74th Cong., 1st Sess.), and in 1947 when the Taft-Hartley amendments were enacted (See 93 Cong.Rec. 6444 and 6602; H.Conf.Rep. 510, 80th Cong., 1st Sess.). This position was based on a desire to avoid the possibility of dilatory tactics by the allegedly aggrieved party which might delay the establishment of a collective bargaining relationship.

from the bargaining relationship and therefore could have waited and brought a charge of unfair labor practice before the Board instead of instituting suit.[2] Neither court treated that alternative as fatal to jurisdiction. In fact the Second Circuit in Empresa specifically rejected that very contention. There is no valid reason for doing otherwise here.

I turn then to the effect of Fay v. Douds, supra. The court there held that if plaintiff's assertion of violations of his constitutional rights are "not transparently frivolous", the District Court has jurisdiction over the matter and should "dispose of all other questions which arose, even though they would not have been independently justiciable." (172 F. 2d at p. 723).

Are plaintiff's allegations here "transparently frivolous"?

The U. S. Pillow complaint claims: (1) that the Board's determination constitutes a denial of procedural due process in that it is arbitrary and capricious and not based on substantial evidence in violation of the Fifth Amendment; (2) that the decision constitutes the taking of private property and an unlawful impairment of the obligation of contract without due process in contravention of the Fifth Amendment; (3) that it violates plaintiff's right under the First Amendment to peaceably assemble and associate with those similarly situated for lawful purposes; and finally (4) that it violates administrative due process as guaranteed by the Administrative Procedure Act (5 U.S.C.A. § 1001 et seq.).

(1)

■■ The claim of a denial of procedural due process is totally without merit. "The requirements imposed by that guaranty are not technical, nor is any particular form of procedure necessary." Inland Empire District Council, Lumber & Sawmill Workers Union v. Millis, 325 U.S. 697, 710, 65 S.Ct. 1316, 1323, 89 L.Ed. 1877 (1945); Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct.

906, 80 L.Ed. 1288 (1936). The Board here followed the procedure prescribed for cases of this sort by § 9(c) of the Act (29 U.S.C.A. § 159(c)). A full hearing was held before the Regional Hearing Officer on all of the issues of the case and all of the parties were heard. In reviewing the Regional Director's finding the Board read and considered the brief submitted by the plaintiff. No oral argument was heard and the case was decided by the Board on review on the basis of a rule which had previously been applied for some time and which was simply restated in the applicable context of its opinion. The fact that plaintiff disagrees with that rule or that its application resulted in an unfavorable determination against it is wholly insufficient to show denial of procedural due process. The rule relied on by the Board was not retroactive as plaintiff suggests and, indeed, in the light of the thorough review of the precedents for its determination by the Board in its opinion, plaintiff's contention of retroactivity has no validity whatsoever.

In a case in which the court was required to go a good deal further than I need to go here the Court of Appeals for the District of Columbia held:

"While no doubt the Board could receive evidence as to whether the rule should be applied in a particular case, it would deprive the Board of the right to establish the rule for generally uniform guidance if of necessity the Board must open for an evidentiary hearing, such as appellant here sought, each case * * *. It seems to us that this amounts to saying that due process of law does not permit the Board to establish a general rule on the subject, and this, as we have indicated, would be inconsistent with a fundamental purpose of the Act, namely, to permit employees to have a free choice of representatives in the interest of industrial peace to be achieved through collective bargaining." Milk and Ice-

2. See 73 Harv.L.Rev. 84, 219–220 (1959).

Cream Drivers and Dairy Employees Union, Local 98, International Brotherhood of Teamsters v. McCulloch, 306 F.2d 763 (D.C.Cir. 1962).

Plainly plaintiff was not denied procedural due process by the Board in this case.

### (2)

Congress in legislating to regulate and regularize labor-management relations in the nation has refused to interfere with multi-employer associations created for collective bargaining purposes. This is on the theory that multi-employer bargaining is often a vital factor in effectuating the national policy of promoting labor peace. See National Labor Relations Board v. Truck Drivers Local Union No. 449, 353 U.S. 87, 94–96, 77 S.Ct. 643, 1 L.Ed.2d 676 (1957). However, it is clear that "Congress intended 'that the Board should continue its established administrative practice of certifying multi-employer units, and intended to leave to the Board's specialized judgment the inevitable questions concerning multi-employer bargaining bound to arise in the future.'" National Labor Relations Board v. Truck Drivers Local Union No. 449, supra, 353 U.S. at p. 96, 77 S.Ct. at p. 647.

Regulation under the Wagner, Taft-Hartley and Landrum-Griffith Acts has frequently involved interference with "freedom of contract." It has long been held that such regulation does not violate the Fifth Amendment as long as it is reasonable and calculated to protect commerce against threatened industrial strife. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937); National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 64 S.Ct. 576, 88 L. Ed. 762 (1944); Local 1545, Brotherhood of Carpenters and Joiners of America, AFL–CIO v. Vincent, 2 Cir., 286 F. 2d 127 (1960); Milk and Ice Cream Drivers and Dairy Employees Union, Local 98, International Brotherhood of Teamsters v. McCulloch, supra.

While it is true that the cases in this field dealing with restrictions on the right to contract are primarily directed to the Board's application of its contract bar rule, the extension of the rule to the case at bar is both logical and necessary. The reasons for permitting the Board to regulate the rights of the parties to contract in this case are the same as those for approving the contract bar rule. Both restrictions on the freedom to contract are in furtherance of the mandate given to the Board by Congress to promote labor peace. The reasoning of the cases just cited applies here.

Moreover, the plaintiff's parade of the horrors which it claims may result from the Board's decision restricting its right to contract in this situation are singularly unimpressive in view of the standards which the Board has set and the manner in which it has restricted limitations on freedom of contract in its decision.

■ There is no merit to plaintiff's contention that the decision of the Board constitutes either taking of private property without due process or impairment of the obligation of the contract in contravention of the Fifth Amendment.

### (3)

■ Plaintiff's First Amendment argument is virtually self-defeating. U. S. Pillow concedes that nothing in the Board's decision requires it to withdraw from the Association or denies it the right to use the Association as its agent to bargain with whichever union its employees may choose. In essence, its complaint is that although it can peaceably assemble under the decision, the decision's effect makes such peaceable association unnecessary and perhaps unprofitable for it as a practical matter. The First Amendment plainly does not cover such a situation.

### (4)

Plaintiff's bald allegation of denial of administrative due process, under the Administrative Procedure Act, without

anything more, merits no discussion here in view of the record of the proceedings before the Board referred to above. The procedure followed by the Board was proper and its ruling reasonable.

Since none of plaintiff's contentions have merit, it makes no difference whether its complaint is dismissed on the jurisdictional ground that the constitutional issues are frivolous or on the substantive ground that it fails to state a claim on which relief can be granted. See Fay v. Douds, supra. In either event defendant's motion for judgment of dismissal must be granted. It follows that plaintiff's motion for an injunction pendente lite must be denied.

Judgment will be entered accordingly.

It is so ordered.