COUNCIL 19, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, etc., Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD et al., Defendants.

No. 68 C 229.

United States District Court
N. D. Illinois, E. D.

Sept. 4, 1968.

Supplemental Order Dec. 10, 1968.

Gilbert Cornfield and Barbara Hillman, Kleiman, Cornfield & Feldman, Chicago, Ill., for plaintiff.

Lawrence Ehrlich, Borovsky & Ehrlich, Chicago, Ill., for defendant Drexel Home.

Benjamin L. Jacobson and Marvin Gittler, Asher, Greenfield, Gubbins & Segall, Chicago, Ill., for defendant Hospital Employees Labor Program.

William J. Cavers and Edward T. Maslanka, Regional Attys., N. L. R. B., Chicago, Ill., and Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., for defendant N. L. R. B.

## MEMORANDUM OPINION

DECKER, District Judge.

The plaintiff labor union is attempting to represent certain employees of Drexel Home, an Illinois nursing home; so also is the defendant labor union, Hospital Employees Labor Program. The complaint requests that the NLRB be compelled to assert jurisdiction over the two unions' dispute. In response, all defendants have moved to have the complaint dismissed for lack of subject matter jurisdiction, maintaining further that the complaint fails to state a cause of action. As explained below, I am denying these motions since the NLRB has apparently violated 29 U.S.C. § 152(2) (1965) by declining to exercise jurisdiction as required by Congress.

*I. The Factual Background*

On a motion to dismiss, the allegations of the complaint must be taken as true. The plaintiff, Council 19, maintains that it wrote the management of Drexel Home several times during the latter half of 1967, indicating that a majority of the nurses' aids, orderlies, dietary workers, and housekeeping workers wanted Council 19 to be its bargaining representative. As these communications were never answered, in December 1967 plaintiff filed with the Regional Director of the NLRB a petition for certification of Council 19 as the exclusive bargaining representative of the employees pursuant to Section 9(c) of the National Labor Relations Act (hereinafter "the Act"), 29 U.S.C. § 159(c) (1965).

Rather than holding a hearing, the Regional Director dismissed the petition, writing that it had been "carefully investigated and considered;" furthermore,

"In University Nursing Home, Inc., 168 NLRB No. 53, the Board asserted jurisdiction over *proprietary* nursing homes and related facilities. Investigation discloses that Drexel Home, Inc., whether a nursing home or a related facility, is a non-proprietary institution, in that no part of the net earnings inures to the benefit of any private shareholder or individual. Therefore, I am dismissing the petition in this matter."

Pursuant to the Board's rules, the plaintiff then requested a review of the dismissal. Sustaining the Regional Director, the NLRB held:

"The Board * * * has concluded that it will not effectuate the policies of the Act to assert jurisdiction over not-for-profit, or non-proprietary, institutions such as the Employer's and that such institutions, whether they be nursing homes or related facilities, do not fall within the purview of *University Nursing Home, Inc.*, wherein the Board implicitly declined to assert jurisdiction over such non-proprietary institutions."

Plaintiff also filed an unfair labor practice charge with the Regional Director in January 1968, asserting that Drexel Home unlawfully encouraged and dealt with the defendant union after plaintiff had notified the Home that a majority of the employees wished to be represented by Council 19. Both the Regional Director and the General Counsel of the NLRB dismissed this charge with the same explanation that the Board declined to exercise jurisdiction over the dispute.

Requesting a multitude of remedies, the plaintiff charges primarily that the NLRB acted in an arbitrary, discriminatory fashion by refusing to assert jurisdiction over non-proprietary nursing homes and related facilities while simultaneously assuming jurisdiction over proprietary nursing homes.

## II. District Court Jurisdiction

■ Ordinarily, judicial review of the Board's handling of representation petitions cannot be obtained in a district court. Review may only be had in the Courts of Appeals, and then only if an unfair labor practice charge is issued by the Board. 29 U.S.C. § 160(f) (1965). As stated by the Supreme Court:

"It is to be noted that § 9 [§ 159], which is complete in itself, makes no provision, in terms, for review of a certification by the Board and authorizes no use of the certification or of the record in a certification proceeding, except in the single case where there is a petition for enforcement or review of an order restraining an unfair labor practice as authorized by § 10(c) [§ 160(c)]. In that event the record in the certification proceeding is included in the record brought up on review of the Board's order restraining an unfair labor practice. It then becomes a part of the record upon which the decree of the reviewing court is to be based."

A. F. of L. v. Labor Board, 308 U.S. 401, 406, 60 S.Ct. 300, 302, 84 L.Ed. 347 (1940). Accord, Boire v. Greyhound Corp., 376 U.S. 473, 476–477, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). Since there is no Board order relating to an unfair labor practice charge in the present case, this general rule appears to exclude review under Section 10 of the National Labor Relations Act.

■ On the other hand, there are three well-established exceptions to the preceding jurisdictional rule. First, the district courts may act if an NLRB ruling interferes with the national government's foreign relations. McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). Similarly, if a Board order violates a specific prohibition of the Act, the district courts have jurisdiction to correct the abuse. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Finally, a district court may intervene if the Board's order deprives the plaintiff of a constitutional right. Fay v. Douds, 172 F.2d 720 (2nd

Cir. 1949). See generally Judge Weinfeld's excellent discussion of these issues in National Maritime Union of America v. N. L. R. B., 267 F.Supp. 117, 119–120 (S.D.N.Y.1967). Although most of the reported cases deal with district court jurisdiction in election cases rather than unfair labor practice cases, the same general rule and three exceptions appear to apply to both situations. See Balanyi v. Local 1031, I. B. E. W., 374 F.2d 723, 726 (7th Cir. 1967).

■ The first of these exceptions, pertaining to foreign relations, clearly does not apply to this case. Moreover, the Leedom v. Kyne exception is not applicable since the Supreme Court has limited it to "extraordinary circumstances," Boire v. Greyhound Corp., 376 U.S. 473, 479, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), such as those in which the Board attempts to exercise power which has been specifically and deliberately withheld from it by a Congressional statute. Leedom v. Kyne, 358 U.S. 184, 188, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). In order for a district court to assume jurisdiction over the Board's disregard of an affirmative command of the Act, rather than a statutory prohibition, that command would have to be one of the utmost specificity and clarity. *Compare* Railway Clerks v. Employees Assn., 380 U.S. 650, 659–660, 85 S.Ct. 1192, 14 L.Ed. 2d 133 (1965); Miami Newspaper Printing Pressmen's Union v. McCulloch, 116 U.S.App.D.C. 243, 322 F.2d 993 (1963). Plaintiff has not here specified any such unambiguous, mandatory provision of the statute, nor has it alleged that the Board violated a clear legislative prohibition.

*III. The Fay v. Douds Exception*

Thus, the remaining jurisdiction exception is that created by Fay v. Douds for the redress of deprivations of constitutional rights. See also Inland Empire Council, Lumber and Sawmill Workers Union, Lewiston, Idaho v. Millis, 325 U.S.

697, 700, 65 S.Ct. 1316, 89 L.Ed. 1877 (1945). In *Fay*, plaintiff union asserted procedural irregularities in the Board's approval of a representation election for a rival union, thereby depriving the plaintiff of rights under its existing collective bargaining agreement with the employer. Specifically, Judge Learned Hand stated:

"[Plaintiff] asserts that the Local has a 'property' right in the maintenance of its position as exclusive bargaining agent, and that this was substantially invaded by denying its privilege of a hearing upon the 'investigation,' preparatory to deciding whether an election should be called. If this assertion of constitutional right is not transparently frivolous, it gave the District Court jurisdiction; * * *. Although, as will appear, we do not think that the Local was denied any constitutional right, we do think that its contention is not so plainly untenable that the District Court might not proceed to decide the other issues involved. * * * [To 'investigate'] without any hearing can plausibly be thought to be a denial of due process of law." 172 F.2d 723.

In many of the cases which are heard under the Fay v. Douds exception, the constitutional deprivation is based upon existing union contracts, and the alleged violation is the failure to follow prescribed statutory procedural requirements. Therefore, the plaintiff union's interest is often labeled a "property right." See, e. g., Lawrence Typographical Union v. McCulloch, 121 U.S.App.D.C. 269, 349 F.2d 704, 708 (1965); Miami Newspaper Printing Pressmen's Union v. McCulloch, 116 U.S.App.D.C. 243, 322 F.2d 993, 996 (1963); McLeod v. Local 476, United Brotherhood of Industrial Workers, 288 F.2d 198, 201 (2d Cir. 1961); Department & Specialty Store Employees' Union v. Brown, 284 F.2d 619 (9th Cir. 1961).[1]

1. See also Hughes v. Getreu, 266 F.Supp. 15, 17 (S.D.Ohio 1967); U. S. Pillow Corp. v. McLeod, 208 F.Supp. 337 (S. D.N.Y.1962); New Bedford Loomfixers' Union v. Alpert, 110 F.Supp. 723. 727

(D.Mass.1953); Worthington Pump & Machinery Corp. v. Douds, 97 F.Supp.. 656 (S.D.N.Y.1951); Atlanta Metallic Casket Co. v. United Paperworkers, 87 F. Supp. 718 (N.D.Ga.1949).

■ The rationale underlying Fay v. Douds, however, is not restricted to "property rights" but extends to all constitutional deprivations. Relying upon the Supreme Court's holding in Office Employees v. Labor Board, 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957), Council 19 maintains that the Board's refusal to assert jurisdiction over non-proprietary nursing homes violates Section 2(2) of the National Labor Relations Act, 29 U.S.C. § 152(2) (1965).[2] Besides depriving it of a statutory right to represent Drexel Home employees, plaintiff asserts that the arbitrary distinction between proprietary and non-proprietary nursing homes violates due process.[3] Council 19's complaint is not "transparently frivolous," (172 F.2d 723) since the Supreme Court declared in *Office Employees* that the Board cannot renounce jurisdiction over an entire category of employers; non-proprietary nursing homes constitute one such group of employers which the Board is now impliedly refusing to oversee. Therefore, this court has jurisdiction to determine whether plaintiff's constitutional rights have been infringed.

*IV.  Plaintiff's Cause of Action*

Even though there is jurisdiction to hear this case, the question remains whether the complaint states a cause of action upon which relief may be granted. ■■ The NLRB may decline to assert jurisdiction on an *ad hoc* basis over

religious, educational, and eleemosynary employers. Sheltered Workshops of San Diego, Inc., 126 N.L.R.B. 961 (1960); Trustees of Columbia University, 97 N.L. R.B. 424 (1951); *compare* Mayo Clinic, 168 N.L.R.B. No. 79 (1967). Moreover, it may refuse to assert jurisdiction in an individual case if the policies of the Act would not be effectuated by such an assertion. Labor Board v. Denver Bldg. Council, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). Section 14 (c) (1) of the Act also allows the agency to

"decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction." 29 U.S. C. § 164(c) (1) (1965).

In the instant dispute, though, the Board has not based its refusal on any of these grounds. Rather, it maintains that all non-profit nursing homes are intrinsically exempt from the National Labor Relations Act. The Board impliedly estimated that this group of homes and related facilities contains about 2,-000 members. University Nursing Home, Inc., 168 N.L.R.B. No. 53, p. 5 (1967).

Once the Board determines that a given class of employers exerts a substantial impact on commerce,[4] that agency

2. That section broadly defines the term "employer," as follows: ·

"The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."

3. Defendants characterize the complaint as only a broad allegation that the Board's

action was arbitrary, unreasonable, unwise and an abuse of discretion, which assertion has been held to be "transparently frivolous" by the Ninth Circuit in Teamsters, Chauffeurs, etc. v. N.L.R.B., 375 F.2d 966, 977 (1967). For reasons explained in part IV of this opinion, however, I believe that plaintiff's allegations, if proved, establish that it has been denied due process of law.

4. In University Nursing Homes, Inc., 168 N.L.R.B. No. 53, p. 5 (1967), the Board found that:

"because the operations of nursing homes and related facilities are analogous to the operations of such hospitals and also substantially affect commerce in much the same manner, we find, for all the reasons set forth in *Butte*, that it will effectuate

may not renounce "jurisdiction over an entire category of employers." 353 U.S. 318, 77 S.Ct. 802. An attempt to exempt all labor unions in this manner was rebuffed by the Supreme Court in *Office Employees*. Mr. Justice Clark explained the majority's decision as follows:

"When the Act was amended in 1947 the Congress was aware of the Board's general practice of excluding nonprofit organizations from the coverage of the Act when these organizations were engaged in non-commercial activities. The House of Representatives attempted to give these exclusions specific legislative approval. However, the Senate draft of the bill excluded only hospital employers from the Act's coverage. The Senate version became a part of the Act * * *." 353 U.S. 318–319, 77 S.Ct. 802–803.

Therefore, all non-profit employers except hospitals were included within the Board's jurisdiction.

The joint committee report relating to the 1947 amendments qualified the preceding inclusive statutory language by providing that non-profit employers should be included "in exceptional circumstances and in connection with purely commercial activities." H.R.Rep.No. 510, 80th Cong., 1st Sess. 32, U. S. Code Cong. Service 1947, p. 1137. While the exact meaning of this qualification is unclear, the instant case seems to meet its standards. The Board recognized that nursing homes perform commercial activities, describing them as follows:

"Their primary function, generally speaking, is to provide skilled convalescent and health-care services, supplementing the functions of the short-term proprietary hospitals which offer acute medical and surgical services. The operations of the health-care facilities here under consideration correspond in this broad purpose to those of proprietary hospitals. * * * The business aspects of the

operations of nursing homes are akin to those of proprietary hospitals and affect commerce in substantially the same manner." University Nursing Home, Inc., 168 N.L.R.B. No. 53, p. 5 (1967).

Furthermore, this case presents "exceptional circumstances" because the Board is attempting, by its own fiat, to limit its jurisdiction only to those nursing homes operating for profit, while excluding all nursing homes performing the same type of services on the sole ground that they are not operating for profit. Such a distinction, on its face at least, bears no reasonable relationship to the homes' impact on commerce or to the Act's goal of assuring employees the right to organize and bargain collectively. See 29 U.S.C. § 157 (1965). Accordingly, this apparently arbitrary distinction violates the plaintiff's rights to due process of law.

The implied rationale for the Board's differentiation among nursing homes is based upon the homes' similarity to hospitals. Section 2(2) of the Act exempts non-profit hospitals; since nursing homes supplement the care provided by hospitals, the Board seems to believe the Act also exempted non-profit nursing homes. Such reasoning, however, ignores the explicit language of Section 2 (2) (exempting only hospitals) and Congress' deliberate decision not to expand the exemption beyond hospitals. Moreover, the Board's decision effectively exempts an entire class of employers from its jurisdiction, as forbidden by *Office Employees*.

### V. Conclusion

For the foregoing reasons, I have entered an order today denying the defendants' motions to dismiss Council 19's complaint.

### SUPPLEMENTAL ORDER

In its memorandum opinion of September 4, 1968, the court concluded that the N.L.R.B.'s refusal to assert jurisdiction

the policies of the Act to assert jurisdiction over the Employer as well as over

proprietary nursing homes and related facilities * * *."

over Drexel Home was arbitrary and violated due process, since the Board's declination was based merely on the employer's status as a member of the class of non-proprietary, charitable nursing homes. Having considered the matter, the Board has decided not to contest further this holding. It has therefore ordered the "petition for certification of representative" reinstated and has remanded the proceeding to the regional director for region 13.

Therefore, pursuant to the joint motion of the plaintiff and the N.L.R.B., the complaint is dismissed without prejudice.