**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERCO, a Nevada Corporation;
U-HAUL INTERNATIONAL INC., a
Nevada corporation; OXFORD LIFE
INSURANCE COMPANY, an Arizona
corporation,
          *Plaintiffs-Appellants,*

          v.

NATIONAL LABOR RELATIONS
BOARD; ROBERT J. BATTISTA,
Chairman, National Labor
Relations Board; WILMA B.
LIEBMAN, Board Member, National
Labor Relations Board; PETER C.
SCHAUMBER, Board Member,
National Labor Relations Board;
DENNIS P. WALSH, Board Member,
National Labor Relations Board;
PETER N. KIRSANOW,* Board
Member, National Labor Relations
Board;

No. 04-16389

D.C. No.
CV-04-00978-SRB

OPINION

---

*Peter N. Kirsanow is substituted for his predecessor, Ronald E. Meisburg, as Board Member, National Labor Relations Board, pursuant to Fed. R. App. P. 43(c)(2).

RONALD E. MEISBURG,** General
Counsel, National Labor Relations
Board; CORNELE A. OVERSTREET
Regional Director, Region 28,
National Labor Relations Board,
              *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted
May 17, 2006—San Francisco, California

Filed August 10, 2006

Before: Pamela Ann Rymer and Kim McLane Wardlaw,
Circuit Judges, and William Alsup,*** District Judge.

Opinion by Judge Wardlaw

---

**Ronald E. Meisburg is substituted for his predecessor, Arthur F. Rosenfeld, as General Counsel, National Labor Relations Board, pursuant to Fed. R. App. P. 43(c)(2).

***The Honorable William Alsup, United States District Judge for the Northern District of California, sitting by designation.

**COUNSEL**

Scot L. Claus, Mariscal, Weeks, McIntrye & Friedlander, P.A., Phoenix, Arizona, argued the case and was on the briefs for appellants AMERCO, U-Haul International, Inc., and Oxford Life Insurance Company. Gary L. Birnbaum, Mariscal, Weeks, McIntrye & Friedlander, P.A., Phoenix, Arizona, and Lawrence D. Levien, Daniel Joseph, and Joshua B. Waxman, Akin Gump Strauss Hauer & Feld LLP, Washington, D.C., were on the briefs.

Dawn L. Goldstein, Senior Attorney, National Labor Relations Board, Washington, D.C., argued the case and was on the briefs for all the appellees. Arthur F. Rosenfeld, John E. Higgins, Jr., John H. Ferguson, Margery E. Lieber, and Eric G. Moskowitz were on the briefs.

**OPINION**

WARDLAW, Circuit Judge:

We must address a question that we have never explicitly addressed: whether a district court has jurisdiction to enjoin

an ongoing unfair labor practices hearing when one party asserts that it has not been accorded all the process it is due. Because the answer is squarely controlled by *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938), we affirm the district court's order dismissing the Appellants' motion for a preliminary injunction based on lack of subject matter jurisdiction. In accordance with *Myers* and all of our sister circuits that have considered this question, we hold that the petition for review process detailed in the National Labor Relations Act, 29 U.S.C. § 160(f), which authorizes appellate court review of final decisions by the National Labor Relations Board, is the exclusive mechanism for federal court review of decisions made in unfair labor practice hearings.

I.

In 2003, the National Labor Relations Board (NLRB) initiated a complaint against U-Haul of Nevada ("U-Haul") for alleged unfair labor practices aimed at preventing unionization and punishing pro-union activities at two truck repair facilities in Nevada. The complaint arose from a series of charges filed by the International Association of Machinists and Aerospace Workers, Local Lodge 845, AFL-CIO ("the Union"), following the closure of one of U-Haul's repair facilities and the discharge of a number of employees at both facilities.

The NLRB filed a Fourth Consolidated Complaint against U-Haul on December 24, 2003, setting a hearing date before an Administrative Law Judge (ALJ) for January 12, 2004. At some point between December 24, 2003, and January 7, 2004, officials in the NLRB's Region 28 office uncovered alleged unfair labor practice violations associated with the facility closure by U-Haul's parent companies AMERCO, U-Haul International, and Oxford Life Insurance Company (collectively "AMERCO"),[1] as well as evidence that AMERCO

---

[1] U-Haul International provides accounting, technical, and advisory services to a number of independently operated subsidiaries that provide

exercised centralized control over U-Haul during the period of labor strife. The NLRB drafted a charge against AMERCO and provided the draft charge to the Union, which filed it on January 7, 2004.

The hearing against U-Haul began as planned on January 12. After three weeks of testimony, a significant part of which had focused on U-Haul's relationship with AMERCO, the NLRB filed a Fifth Consolidated Complaint on February 5, 2004. The Fifth Consolidated Complaint included the two independent allegations of unfair labor practices against AMERCO. It also charged them with being a "single employer" and a "single integrated enterprise" with U-Haul. The "single integrated enterprise" allegation was particularly troubling for AMERCO, because, if proven, it would make them derivatively liable for any violations found to have been committed by U-Haul.[2]

Over AMERCO's objections, the ALJ granted the NLRB's motion to consolidate the Fifth Complaint into the ongoing trial. In an effort to accommodate AMERCO's due process and fairness concerns, the ALJ granted AMERCO the right to recall any witnesses or challenge any evidence relating to its relationship with U-Haul (the basis for derivative liability). However, he denied their request to recall witnesses and challenge evidence associated only with U-Haul's liability for the primary offenses. His order explained:

> Since the primary issue for resolution is really the derivative liability of the new respondents, there has

direct moving-related services to consumers. U-Haul is one of its subsidiaries but is not a party to this appeal. AMERCO is a holding company that holds the stock of four corporations, including U-Haul International and Appellant Oxford Life Insurance Company.

[2]The Complaint also named Five Sac Self-Storage Corporation, Sac Holding Corporation, and Sac Holding Corporation II. The record does not explain their lack of participation in this appeal.

been no prejudice to respondents as these issues have yet to be litigated. If the new respondents are given an opportunity to prepare and an opportunity to present evidence, including the right to examine and cross-examine any witnesses called on the issues of derivative liability, as well as the [independent charges against AMERCO], including the right to call those who have already testified . . . on these issues, they will be afforded a full and fair hearing on the issues affecting them.

After the denial of their numerous requests for a continuance, motions for reconsideration, and efforts to obtain interlocutory review from the NLRB, AMERCO filed suit in the United States District Court for the District of Arizona, moving for a preliminary injunction to halt the proceedings on due process grounds. They alleged that the NLRB had tried them in absentia for the first three weeks of the hearing, in an effort to gain an unfair advantage from their absence and lack of representation, and with full knowledge that a complaint ultimately would be filed against them. The district court dismissed the preliminary injunction motion for lack of subject matter jurisdiction. *See AMERCO v. NLRB*, 330 F. Supp. 2d 1083 (D. Ariz. 2004). Its Order concluded that this case was controlled by *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938), which held that the courts of appeals have exclusive jurisdiction over review of unfair labor practice hearings. The Order also concluded that the judicially-created exceptions allowing district court intervention to remedy statutory or constitutional violations in disputes about union representation were not available in the context of an unfair labor practice dispute.

After the district court denied a motion to stay the ALJ proceedings pending appeal, the hearing resumed and ultimately concluded in July 2005. The ALJ reached a decision on September 30, 2005, and both parties have filed exceptions to the

decision, 29 C.F.R. § 101.11, on which the NLRB has yet to rule.[3]

## II.

We have jurisdiction over this appeal from the district court's final order pursuant to 28 U.S.C. § 1291. We review de novo the district court's grant of a motion to dismiss for lack of subject matter jurisdiction. *See Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 n.2 (9th Cir. 2004).

## III.

## A.

**[1]** We requested supplemental briefing as to whether this appeal has become moot. "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor." *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986). That the unfair labor practice hearing AMERCO sought to enjoin has since concluded is not dispositive. We recently reiterated that "[t]he question is not whether the precise relief sought at the time of the application for an injunction was filed is still available. The question is whether there can be any effective relief." *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1157 (9th Cir. 2006) (internal quotation marks omitted). The NLRB has not yet issued a "final order" in the proceedings before it, a decision which would enable appellate review pursuant to 29 U.S.C. § 160(f). Because the underlying proceedings are still in progress, we could reverse the district court's decision that it lacked jurisdiction to enjoin the proceedings and order that it

---

[3]The record does not inform us precisely how the ALJ ruled on the numerous issues before him, but given that AMERCO filed exceptions to his decision, as well as a motion to reopen the record, we assume that the ALJ ruled at least in part against them.

"undo" the alleged constitutional injuries by restoring the pre-consolidation status quo, thus providing AMERCO complete and effective relief. *See Earth Island Inst.*, 442 F.3d at 1157-58; *Garcia*, 805 F.2d at 1402-03. Therefore, this case is not moot.

B.

**[2]** Regardless of the viability of AMERCO's constitutional claims, the district court lacked jurisdiction to remedy them. Section 10 of the National Labor Relations Act, which defines the procedure for adjudicating unfair labor practice claims, vests exclusive jurisdiction in the courts of appeals to review errors arising from such proceedings:

> Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in . . . by filing in such a court a written petition praying that the order of the Board be modified or set aside.

29 U.S.C. § 160(f). Section 10 provides no separate process for obtaining injunctive relief prior to the issuance of a final order.

**[3]** In *Myers*, the Supreme Court confronted the precise question raised here: whether a district court has the authority to enjoin an unfair labor practice hearing when the corporation under investigation claims that the hearing is proceeding in violation of the United States Constitution. 303 U.S. at 43, 46. The Court answered in the negative, emphasizing that review in the courts of appeals is both exclusive and comprehensive. *Id.* at 48. The *Myers* Court explained that the scope of the review authorized by Section 10(f) allows an appellate court to consider "all questions of the jurisdiction of the

Board and the regularity of its proceedings, [and] all questions of constitutional right or statutory authority." *Id.* at 49; *see also Detroit Newspaper Agency v. NLRB*, 286 F.3d 391, 400-01 (6th Cir. 2002) (following *Myers*).

AMERCO contends that, despite this language, the Supreme Court intended that injunctive relief should be available in the district courts to remedy procedural due process violations. For this proposition, AMERCO points to one sentence in the *Myers* opinion, in which the Court noted that in the case before it, there was "no claim by the corporation that the statutory provisions and the rules of procedure prescribed for such hearings are illegal; or that the corporation was not accorded ample opportunity to answer the complaint of the Board; or that opportunity to introduce evidence on the allegations made will be denied." 303 U.S. at 47. Appellants construe this sentence as a declaration that any time a corporation claims it was not afforded "ample opportunity" to answer the complaint or to introduce evidence it wishes to admit in an unfair labor practice hearing, immediate remedy may be sought in the district court. We reject such a strained reading of Supreme Court precedent.

**[4]** First, AMERCO does not cite, and we cannot find, any case law supporting such a broad interpretation. Indeed, a number of our sister circuits have rejected the proposition that procedural due process claims warrant departure from the *Myers* rule. *See, e.g., J.P. Stevens Employees Educ. Comm. v. NLRB*, 582 F.2d 326, 328-29 (4th Cir. 1978) (district court lacked jurisdiction to review ALJ's denial of motion to intervene, even though the ALJ's ruling implicated due process and impeded the organization's ability to respond to the complaint and introduce evidence); *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 670-71 (5th Cir. 1966) (district court lacked jurisdiction to grant injunctive relief when employer claimed that the failure to sever unfair labor practice charges violated due process).

**[5]** Second, allowing parties to seek injunctive relief whenever an "opportunity to introduce evidence" is denied would substantially delay the NLRB's process for rectifying unfair labor practices, precisely what Section 10 and its streamlined appeal mechanism seek to avoid. *Myers*, 303 U.S. at 48 n.5 (citing House Committee Report, H.R. Rep. 1147, 74th Cong., 1st Sess., p. 24 (1935)). The circumstances of this case highlight the burdens that AMERCO's interpretation would generate: If the hearing on AMERCO's liability had been delayed while they pursued their due process claims in this proceeding, and if those claims had ultimately failed, the hearing would have been delayed by more than three full years. By that time, evidence would be stale, memories would be failing, and the NLRB's ability to restore the status quo ante would be that much more difficult.

**[6]** Third, and most important, the exception advanced by AMERCO is inconsistent with the doctrine of administrative exhaustion. Exhaustion serves two vital purposes: first, to give the agency an initial opportunity to correct its mistakes before courts intervene; and second, to enable the creation of a complete administrative record should judicial review become necessary. *Ngo v. Woodford*, 403 F.3d 620, 624 (9th Cir. 2005), *rev'd on other grounds*, 126 S. Ct. 2378 (2006). If we allowed companies accused of unfair labor practices to raise their procedural claims in federal court before the NLRB had a chance to review their grievances, we would be "substitut[ing] the District Court for the Board as the tribunal to hear and determine what Congress declared the Board exclusively should hear and determine in the first instance." *Myers*, 303 U.S. at 50. As the *Myers* Court concluded, such an approach would be "at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id.* at 50-51.

**[7]** At this time, the NLRB has taken under submission both parties' exceptions to the ALJ's September 2005 ruling.

The NLRB may yet decide that AMERCO's due process rights were violated and that the ALJ hearing must be reopened to allow them to participate fully in the litigation of U-Haul's primary liability. If, on the other hand, the NLRB rejects these due process claims, AMERCO may at that point raise them before us, pursuant to 29 U.S.C. § 160(f). Given the possibility of correction by the administrative agency and the availability of federal appellate review, district court jurisdiction at this stage would be both premature and contrary to congressional intent.

## C.

We also reject AMERCO's argument that the district court may exercise jurisdiction pursuant to *Leedom v. Kyne*, 358 U.S. 184 (1958) (allowing district court jurisdiction to enjoin the NLRB from acting in a manner clearly contrary to statutory direction), or *Fay v. Douds*, 172 F.2d 720 (2d Cir. 1949) (Hand, J.) (suggesting that district court jurisdiction is appropriate whenever a party in a labor dispute asserts non-frivolous claims of a constitutional violation). Neither of these cases is applicable here. Both *Leedom* and *Fay* arose in the context of Section 9 representation proceedings, *see* 29 U.S.C. § 159 (establishing procedures for selecting union representation and determining appropriate bargaining units), which are distinct from Section 10 unfair labor practice hearings in a way critical to our decision. Whereas Congress explicitly authorized appellate review of every NLRB unfair labor practice decision, Congress provided no similar check on NLRB decisions made pursuant to Section 9. *See NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 105 (3d Cir. 1979) (as amended) (explaining that Congress omitted judicial review from Section 9 "[b]ecause of the compelling interest in moving collective bargaining forward in an expeditious manner"); *see also Am. Fed'n of Labor v. NLRB*, 308 U.S. 401, 409 (1940). As a result, a party that seeks to challenge a Section 9 representation decision has no statutory recourse to the fed-

eral courts, unless the decision is later implicated by an unfair labor practice hearing.

**[8]** The exceptions of *Fay* and *Leedom* derive from the inequity that would result if no court could review claims that the NLRB acted unconstitutionally or contrary to statutory authority in a Section 9 determination. The Supreme Court explained in *Leedom*:

> [A]bsence of jurisdiction of the federal courts would mean a sacrifice or obliteration of a right which Congress has given professional employees, for there is no other means, within their control, to protect and enforce that right. And the inference is strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control.

358 U.S. at 190 (alterations omitted) (citations and internal quotation marks omitted); *see also Fay*, 172 F.2d at 723. Therefore, both cases held that the district court has jurisdiction to enter injunctive relief against certain representation decisions when a party's statutory or constitutional rights otherwise might never be vindicated.

This principle and its limited scope were reinforced in *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32 (1991). The *MCorp* Court reviewed the validity of an injunction requiring the Federal Reserve Board (FRB) to halt an enforcement action it had instituted against a bank. Although the Court of Appeals acknowledged that a federal statute explicitly precluded the district courts from enjoining such enforcement proceedings, *id.* at 36-37, it invoked *Leedom* for the principle that the district court nonetheless possessed jurisdiction because MCorp alleged that the FRB was enforcing a regulation that exceeded its statutory authority, *id.* at 42-43. The Supreme Court reversed. It reasoned that because the relevant statute "expressly provides MCorp with a meaningful and adequate

opportunity for judicial review of the validity of the [regulation]" after the FRB issues a final order, the district court could not exercise jurisdiction. *Id.* at 43; *see also id.* (noting that "central to [*Leedom*] was the fact that the Board's interpretation of the Act would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights").

**[9]** We recognize the necessity of providing a forum for the vindication of statutory and constitutional rights, but that is not a concern here. As was the case with the statutory question in *MCorp*, any constitutional infirmities raised by AMERCO can be remedied on petition for review from a final order of the NLRB. In fact, the primary case cited by AMERCO to support the merits of their due process claims was decided on a petition for review of a final order, pursuant to Section 10(f). *See N. Mont. Health Care Ctr. v. NLRB*, 178 F.3d 1089, 1093, 1098 (9th Cir. 1999) (as amended); *see also Viking Indus. Sec., Inc. v. NLRB*, 225 F.3d 131, 134-36 (2d Cir. 2000). Therefore, we hold that the *Leedom* and *Fay* exceptions do not apply outside the context of Section 9 actions or other situations in which meaningful judicial review is unavailable.[4]

**[10]** In a final effort to prop up their jurisdictional argument, AMERCO cites three out-of-circuit district court cases.

---

[4]That we have cited *Fay* approvingly on a handful of occasions over the past four decades is of no consequence. None of the decisions citing *Fay* found it applicable in Section 10 proceedings, and, indeed, most have noted that the doctrine is applicable only in representation disputes. *See, e.g., Cannery Warehousemen, Food Processors, Drivers & Helpers for Teamsters Local Union # 748 v. Haig Berberian, Inc.*, 623 F.2d 77, 79 & n.2 (9th Cir. 1980) (describing *Fay* as an "obscure" exception to the rule of "non-reviewability of representation decisions"); *Teamsters, Chauffeurs, Helpers & Delivery Drivers, Local 690 v. NLRB*, 375 F.2d 966, 969-70 (9th Cir. 1967) (describing *Fay* as one of three "extraordinary circumstances" in which a district court may enjoin representation proceedings).

*See McCormick v. Hirsch*, 460 F. Supp. 1337 (M.D. Pa. 1978); *Caulfield v. Hirsch*, No. 76-279, 1977 WL 15572 (E.D. Pa. July 7, 1977); *Council 19 v. NLRB*, 296 F. Supp. 1100 (N.D. Ill. 1968). None of these, however, is on point. The first two cases, *McCormick* and *Caulfield*, involved unionization in parochial schools and its impact on First Amendment religious freedoms. While the two opinions used unnecessarily broad language to describe the reach of *Fay*, they both arose in Section 9 representation disputes and, as in *Leedom* and *Fay*, depended on the fact that judicial "review at that stage is not even possible." *McCormick*, 460 F. Supp. at 1346. The third case, *Council 19*, also arose from a Section 9 dispute. In that case, Council 19 of the American Federation of State, County, and Municipal Employees sought injunctive relief after the Regional Director of the NLRB dismissed its petition to be certified as the exclusive bargaining representative for a group of nurses' aids and orderlies. 296 F. Supp. at 1101-02. AMERCO relies heavily on one sentence from that opinion: "Although most of the reported cases deal with district court jurisdiction in election cases rather than unfair labor practice cases, the same general rule and [the *Leedom* and *Fay* exceptions] appear to apply to both situations." *Id.* at 1103. This slim reed of dictum, unsupported by any reasoning in the opinion, does not support the analytical leap AMERCO urges us to make, from situations in which judicial review is not available *at all* to situations in which judicial review simply is not available *yet*. Relying instead on the guidance of the Supreme Court in *MCorp*, we hold that a district court may intervene in an ongoing labor dispute to remedy alleged statutory or constitutional violations only where meaningful judicial review is otherwise unavailable.

[11] Each of our sister circuits that has considered this question has answered it as we do, holding that *Leedom* and *Fay* are inapplicable to Section 10 unfair labor practice hearings. *See Interstate Dress Carriers*, 610 F.2d at 107; *J.P. Stevens*, 582 F.2d at 328-29; *Grutka v. Barbour*, 549 F.2d 5, 9

& n.7 (7th Cir. 1977); *Bokat*, 363 F.2d at 672-73.[5] All of these cases rely on the clear language of *Myers* and the importance of administrative exhaustion, and we see no reason to depart from their compelling reasoning. We therefore join the Third, Fourth, Fifth, and Seventh Circuits in holding that district courts lack jurisdiction over constitutional claims raised in an unfair labor practice hearing.

## IV.

The Supreme Court's decision in *Myers* requires that employers exhaust their constitutional claims with the NLRB and vests exclusive jurisdiction in the courts of appeals to review such claims after the NLRB has issued its final order. The district court recognized this, and it did not err in dismissing AMERCO's request for injunctive relief based on a lack of subject matter jurisdiction.

**AFFIRMED.**

---

[5]The Sixth Circuit has gone a step further, rejecting the *Fay* doctrine, even in Section 9 proceedings, as "in clear violation of both the expressed Congressional purpose and the principle of exhaustion of administrative remedies." *Blue Cross & Blue Shield of Mich. v. NLRB*, 609 F.2d 240, 244-45 (6th Cir. 1979).