VIKING INDUSTRIAL SECURITY, INC.; Viking Security Inc., also known as Viking Industrial Security, Inc. and Allied National Union, Petitioners–Cross–Respondents,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.

Nos. 2100, 2440, Docket Nos. 98–4395, 99–4013.

United States Court of Appeals, Second Circuit.

Argued: Sept. 1, 1999

Decided: Aug. 28, 2000

**132**

Richard E. Miller, New York, N.Y. (Kurzman Karelsen & Frank, LLP, on the brief), for Petitioners–Cross–Respondents.

Fred L. Cornnell, Washington, D.C. (Frederick L. Feinstein, Linda Sher, John D. Burgoyne, Joan E. Hoyte, National Labor Relations Board, on the brief), for Respondent–Cross–Petitioner.

Before: NEWMAN, CARDAMONE, and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

New Jersey-based Viking Security, Inc. ("Viking New Jersey") petitions for review of the November 30, 1998 supplemental decision and order of the National Labor Relations Board (the "Board"), and the Board cross-petitions for enforcement.

Based on a determination that Viking New Jersey and its now-defunct companion company, New York-based Viking Industrial Security, Inc. ("Viking New York"), once constituted a "single employer," the Board's order holds Viking New Jersey derivatively liable for backpay to Israel Marrero, a former employee of Viking New York whose discharge was found to be an unfair labor practice.

Viking New Jersey contends that (i) the Board erred in finding single employer status as of the time Marrero was fired, (ii) the Board erroneously determined the amount of backpay due, and (iii) because the two companies were no longer a single employer during the unfair labor practice proceedings, the Board's imposition of derivative liability deprived Viking New Jersey of due process of law. Because we find that the Board's imposition of derivative liability on Viking New Jersey violated that company's right to due process, we grant Viking New Jersey's petition for review and deny the Board's petition for enforcement. We do not reach Viking New Jersey's other claims of error.

## BACKGROUND

### A. Facts

In April 1987, Allan Larson founded *Viking New York*, a New York corporation, based in Brooklyn, that provided security guard services. Later that year or early the next, Larson hired Ralph Day as vice president of Viking New York. Day contributed several thousand dollars of capital to Viking New York, became co-owner, and assumed supervisory authority over the security guards.

Larson and Day incorporated *Viking New Jersey* in May 1988 to provide security guard services in New Jersey. For a time, the two Viking entities were operated jointly, held themselves out to the public as a single company, and used the same letterhead, listing both New York and New Jersey addresses. The companies shared an accountant, a payroll service, and some clients, and the record demonstrates that Larson and Day wanted the two companies to be perceived as one by the public.

In August 1989, Viking New York hired Marrero as a security guard. Day terminated Marrero a few weeks later, on September 23, 1989. Marrero asserted that this termination was retaliation for his refusal to disclose to Day how Marrero voted in a union representation election.

At some point during 1988 or 1989, Day and Larson had a falling out, and Viking New York and Viking New Jersey ceased doing business as related entities. Day

ran Viking New Jersey; and Larson ran Viking New York until it went out of business on December 10, 1990. All of Viking New York's employees were hired by a company called Roundstone Security, which bought Viking New York's assets and began servicing its customers. On February 10, 1992, Roundstone too went out of business.

## B. Prior proceedings

About the time of the Viking New York union election, several unfair labor practice charges were filed against that company, one of which related to Marrero's termination. On December 29, 1989, the Board issued a complaint against Viking New York on behalf of Marrero and others. Though Marrero had been fired by Day (who by year's end had left Viking New York and become sole principal at Viking New Jersey), Viking New Jersey was not named as a respondent to the complaint.

The case was tried before an administrative law judge ("ALJ") in October 1990. Day (no longer associated with Viking New York in any way) testified as a witness at the proceeding, without presence of counsel. At one point, the issue of single employer status for Viking New Jersey and Viking New York was raised in the hearing, but the ALJ cut short the discussion by stating that no such allegation had been made. The ALJ issued his decision on September 17, 1991, holding that Marrero's termination violated the National Labor Relations Act (the "Act"). *See Viking Indus. Sec., Inc.*, Nos. 29–CA–14365, –14370, –14489, –14490 (Edelman, *A.L.J.*, Sept. 17, 1991) (*"Viking I"*). When no timely exception was received, the ALJ's recommended order was adopted as the order of the Board. *See* 29 U.S.C. § 160(c); *Viking Indus. Sec., Inc.*, 327 N.L.R.B. No. 43, 1998 WL 835609, at *2 n. 7 (Nov. 30, 1998) (*"Viking III"*) (noting that the Board adopted the ALJ's recommended order on October 25, 1991). That order required Viking New York to take certain affirmative actions, among them:

Offer Israel Marrero immediate and full reinstatement to his former position, o[r] if that job no longer exists, to a substantially equivalent position, without prejudice to his seniority or other rights and privileges previously enjoyed, and make him whole for any loss of earnings sustained as a result of [Viking New York's] unlawful conduct....

*Viking I*, at 9. This Court granted enforcement of the Board's order on September 15, 1992. *See NLRB v. Viking Indus. Sec., Inc.*, No. 92–4139 (2d Cir. Sept. 15, 1992).

On July 2, 1994, four years after Marrero's termination, the Regional Director of the Board issued a backpay specification. This specification alleged that Viking New York and Viking New Jersey constituted a single entity, and treated Viking New Jersey as derivatively liable for Viking New York's obligations. This was the first time Viking New Jersey was named as a party in this dispute. (The specification was subsequently amended twice, both times with Viking New Jersey as a party.)

A supplemental compliance hearing to determine the validity of the backpay specification was conducted by a second ALJ on October 23, 24, and 25, 1995, and January 25, 1996. One issue raised at this hearing was single employer status; Viking New Jersey argued that it had split from Viking New York prior to Marrero's termination. The ALJ agreed with Viking New Jersey that "if ... the split came about before the unfair labor practice[ ] occurred, then Viking New Jersey would not be liable to remedy [it]." *See Viking Indus. Sec., Inc.*, Nos. 29–CA–14365, –14370, –14489, –14490, (Green, *A.L.J.*, May 13, 1996) (*"Viking II"*), *aff'd by and reprinted in Viking III*, 1998 WL 835609, at *7, *11.

On the facts found, however, the ALJ agreed with the backpay specification. He found that the two businesses began operating separately at some undetermined point after October 1, 1989—that is, after

Marrero's termination in September 1989, see *id.* at *11—and concluded that Viking New Jersey's obligation to reinstate Marrero continued despite Viking New York's demise. He made no finding that the two companies continued operating as a single employer on the date that the unfair labor practice complaint was served on Viking New York. The ALJ assessed backpay through the end of 1994, and left open the possibility of backpay after that time. The backpay calculation is complicated by the fact that Marrero held nine different jobs between his 1989 firing and the end of 1994; except for employment at his parents' video store, none of these jobs lasted as long as nine months. See *id.* at *16. The award thus calculated backpay over five years, with the possibility of an assessment now approaching eleven years.

The Board affirmed the ALJ's rulings and conclusions, and (with a slight modification) adopted his recommended order. See *Viking III*, 1998 WL 835609, at *1. Member Brame dissented in part on the ground that Viking New Jersey's reinstatement and backpay obligations should have ended with the dissolution of Roundstone. See *id.* at *5–*7.

Viking New Jersey petitions for review of the Board's order, and the Board cross-petitions for enforcement. This Court has jurisdiction over Viking New Jersey's petition for review of the Board's order pursuant to 29 U.S.C. § 160(f) and jurisdiction over the Board's cross-petition for enforcement of that order pursuant to 29 U.S.C. § 160(e).

Viking New Jersey appeals on the grounds that: (i) derivative liability cannot be imposed because the two Vikings were not a single integrated enterprise at the time of Marrero's firing; (ii) the Board's backpay calculations were erroneous for three separate reasons; and (iii) imposition of derivative liability on Viking New Jersey violated due process of law because Viking New Jersey's interests were unrepresented at the unfair labor practice hearing. Because we find the final argument to be dispositive, we do not reach the others.

## DISCUSSION

The Board asserts that Viking New Jersey can be held derivatively liable for Viking New York's unfair labor practice because the two were a single employer at the time of Marrero's termination. See *Viking III*, 1998 WL 835609, at *3. However, this is not the only date on which the two companies must be shown to have operated together. In order for Viking New Jersey to be bound by an unfair labor practice proceeding brought only against Viking New York, the affiliation between the two companies must be shown to have existed at the time of the proceeding, or at least at the time that the complaint was served.. In this case, the complaint against Viking New York was issued on December 29, 1989, and the first hearing regarding Marrero's termination commenced in October of the following year. There is no finding and no indication in the record that the affiliation continued to the date when the complaint was served or the hearing begun. At oral argument, counsel for the Board conceded that the two Vikings parted ways prior to the first hearing in this dispute.

This Court's leading opinion on derivative liability for unfair labor practices is *Associated General Contractors, Inc. v. NLRB*, 929 F.2d 910 (2d Cir.1991). There, we ruled that an entity could be held derivatively liable for unfair labor practices committed by affiliated entities only upon "a showing of alter ego, successorship or single employer status." *Id.* at 914; cf. *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 401–02, 80 S.Ct. 441, 443, 4 L.Ed.2d 400 (1960) (ruling that derivative liability could be imposed on the basis of single employer status). There is no claim here that Viking New Jersey is an alter ego or successor of Viking New York; Viking New Jersey's liability for Viking New York's transgression is expressly and solely predicated on its supposed status as a

single employer with Viking New York. *See Viking III*, 1998 WL 835609, at \*1.

■■■ As we stated in *Associated General Contractors*, due process requires that the single employer showing be made prior to the imposition of derivative liability:

> We adhere to the view that derivative liability requires a showing of alter ego, successorship or single employer status. *This heightened standard of liability is necessary to guarantee procedural fairness to a non-party to the original unfair labor practice proceeding.* The exceedingly close relationship of alter ego, successor, or single employer status provides *assurance that the proceeding against the original party was equivalent to a proceeding against the newly added party.* In those circumstances, the newly added party has had notice and an opportunity to contest the charge through its control of the original party.

929 F.2d at 914–15 (emphasis added). Because the businesses that compose a "single employer" are deemed to have identical interests, the representation of the interests of one of them at the unfair labor practice hearing amounts to representation of both for the purposes of due process. *See id.* at 915 (citing *Southeastern Envelope*, 246 N.L.R.B. 423, 424, 1979 WL 10154 (1979)); *cf. NLRB v. O'Neill*, 965 F.2d 1522, 1529 (9th Cir.1992) ("Where two parties are alter egos, service on one is sufficient to initiate proceedings against both within the statute of limitations.").

■■■ *Associated General Contractors* considered *what* must be shown in order for derivative liability to attach; the issue now on appeal is not what, but *when.* Viking New York and Viking New Jersey were a single employer at the time of Marrero's termination, but were separate employers throughout the ensuing proceedings. We agree with Viking New Jersey that due process is not satisfied in this case.

■■■ Only where there is an identity between the charged party and a later added party can it be said that "the newly added party has had notice and an opportunity to contest the charge." *Id.* at 915. *But see Northern Montana Health Care Ctr. v. NLRB*, 178 F.3d 1089, 1098 (9th Cir.1999) (holding that *even if* entities are a single employer, only those named in the complaint are bound by the adjudication). In *Southeastern Envelope*, the Board itself relied on identity of interests to justify derivative liability:

> Once found to be [the charged company's] alter ego, [the newly added company] cannot complain that it should have had notice and an opportunity to defend itself against the underlying unfair labor practice charges. Since the interests of alter egos are by definition identical, the alter ego finding in the compliance proceeding conclusively established that [the newly added company] did receive adequate notice, was present at the hearing, and did defend itself through the representation of [the charged company] in the earlier unfair labor practice proceeding.

*Southeastern Envelope*, 246 N.L.R.B. at 424.

■■■ *Associated General Contractors* holds that a showing of identity is necessary to assume that the interests of both companies were represented; the logically compelled obverse of this holding is that where the newly added party is *not* shown to be an alter ego, successor, or single employer at the time of the hearing or at least at the time of service of the complaint, then its individual interests were *not* represented. We note without surprise that in all of the cases cited by the Board in support of derivative liability, the two entities were *still* united at the time of the relevant proceedings. *See NLRB v. International Measurement & Control Co.*, 978 F.2d 334, 337 (7th Cir.1992); *NLRB v. C.C.C. Assocs., Inc.*, 306 F.2d 534, 539 (2d Cir.1962); *Southeastern Envelope*, 246 N.L.R.B. at 424.

Here, however, the two companies went their separate ways before the original unfair labor practice proceedings began.

There is therefore no sufficient guarantee that Viking New Jersey's interests were represented at that hearing.

In this case, our holding is no procedural technicality. The principals of the two companies were at odds. The only named respondent, Viking New York, was headed for insolvency and arguably lacked incentive to mount a strenuous or expensive defense to the unfair labor practice charge.

There is no evidence, and the Board does not allege, that the Viking companies split in order to avoid liability for Marrero's discharge. (They could scarcely have anticipated that anyone would be liable for eleven years of backpay to an employee who worked for not much more than a month.) Nor is there any allegation that Viking New Jersey's absence from the hearing was procured by deceit, which would be a different matter. *See O'Neill,* 965 F.2d at 1526 (enforcing an ALJ finding that fraudulent concealment tolled the statute of limitations for bringing direct complaints); *Fromson v. Citiplate, Inc.,* 886 F.2d 1300, 1301, 1304 (Fed.Cir.1989) (finding corporate officers not "prejudiced" under Fed. R. Civ. Pro. 15(c) by their untimely addition as defendants where, inter alia, the officers had opposed an identical and timely motion with false assurances that the corporate entity could satisfy a judgment). Where there is nothing in the record to demonstrate that Viking New Jersey's absence at the original hearing came about through some fault of its own, its late addition violates due process. *Cf. Nelson v. Adams USA, Inc.,* —— U.S. ——, 120 S.Ct. 1579, 1584, 146 L.Ed.2d 530 (2000) ("[D]ue process ... demand[s] a more reliable and orderly course.").

## CONCLUSION

The petition for review is granted; the petition for enforcement of the order is denied.